Jon Edward HASS, for the sole Use and Benefit of the UNITED STATES of America, and Jon Edward Hass, Individually, Appellant,

v.

UNITED STATES of America et al., Appellees.

No. 74–1996.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1975.

Decided July 1, 1975.

Robert R. Smiley, III, Washington, D. C. (Smiley & Lear, Washington D. C., Trawick H. Stubbs, Jr., New Bern, N. C. on brief), for appellant.

Joseph W. Dean, Asst. U. S. Atty., and William C. Lawton, Raleigh (Thomas P. McNamara, U. S. Atty., on brief), for appellees.

Before WINTER, CRAVEN and RUSSELL, Circuit Judges.

CRAVEN, Circuit Judge:

On May 30, 1971, Marine First Lieutenant Jon Edward Hass was injured while riding a horse he had rented from a stable owned and operated by the Marine Corps at its Air Station in Cherry Point, North Carolina. He sued Raymond Russ and William Williams, the civilian manager and assistant manager of the stable, alleging negligence in their failure to warn him of the horse's dangerous propensity to break its gait and bolt, and also sued the United States, as their employer, under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* The district court granted summary judgment to Russ and Williams on the ground that they were immune from liability, and to the United States on the ground that *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), precluded Hass's suit against it. We affirm.

## I.

### Claim Against the United States

The district court held that Hass's suit against the United States was blocked because his injuries arose out of or in the course of activity incident to his military service. In reaching this conclusion the judge relied upon his findings that (1) Hass was on active duty though in an "off-duty" status at the time of the accident; (2) the government owned and operated the stable for the benefit of servicemen like Hass; (3) the stable was organized pursuant to military order, the Marine Special Services Officer had responsibility for its management and regulation pursuant to Special Services Rules, and Hass and other servicemen were subject to disciplinary measures for violation of the rules; (4) and the government "obviously" supported the stable financially.

█ It is settled that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.

*Feres, supra,* at 146, 71 S.Ct. at 159. *See United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949); *Shaw v. United States,* 448 F.2d 1240, 1241 (4th Cir. 1971) (per curiam). Hass argues, however, that the district court misinterpreted what the Supreme Court meant by

the phrase "incident to service" and thus looked to the wrong factors. We disagree.

In *Brooks, supra,* the Supreme Court found no incidence to military service in injuries and death incurred by two servicemen on furlough when the private car in which they were riding on a public highway was struck by an Army truck. In *Feres, supra,* the Court disallowed three suits, finding incidence to service in these situations: death of an active-duty serviceman in a barracks fire allegedly caused by negligence of military personnel, injury to an active-duty serviceman from a foreign object left in his abdomen during surgery by a military doctor, and death of an active-duty serviceman due to negligent medical treatment by Army surgeons. In *Brown, supra,* the Court found no incidence to service in an injury incurred by a discharged veteran during treatment in a Veterans Administration hospital.

The phrase "incident to service" was given content by Justice Jackson in *Feres* when, after setting out the facts of the three appeals there under review, he stated: "The common fact underlying the three cases is that each claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces." 340 U.S. at 138, 71 S.Ct. at 155. This common fact was sufficient for the Court to find incidence to service in all three appeals without further discussion. *Id.* *Brooks* and *Brown* failed the *Feres* test of "incidence to service" because the claimants in those cases were not on active duty, the soldiers in *Brooks* being on furlough

and the claimant in *Brown* having been discharged. *Cf. Alexander v. United States,* 500 F.2d 1, 5 (8th Cir. 1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975).

Hass argues, however, that language in *Brown* and the later case of *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), has enlarged liability and that the dispositive questions are whether his activity at the time of the accident was directly related to his specific military duties and whether allowance of his suit would tend to interfere with military discipline by pitting him in litigation against persons in his chain of command. We disagree. The language in *Brown* [1] relied upon by Hass is simply an explanation or rationale for the *Feres* test. The operations undergone by two of the claimants in *Feres* bore no relationship to their specific duties, and allowing suit against the doctors could not conceivably have interfered with discipline in claimants' lines of command; yet suit was disallowed because the injuries were deemed incident to service.

We believe, therefore, that the correct test is the relatively mechanical one derived from the *Feres* language quoted above, rather than the test urged by Hass. *Accord, Harten v. Coons,* 502 F.2d 1363, 1365 (10th Cir. 1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975); *Henninger v. United States,* 473 F.2d 814, 816 (9th Cir. 1973), *cert. denied,* 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973); *Hall v. United States,* 451 F.2d 353, 354 (1st Cir. 1971). *But cf. Hale v. United States,* 416 F.2d 355, 358—

1. The language in *Brown* is found at 348 U.S. 112, 75 S.Ct. 143, where Justice Douglas explained as follows *Feres*'s excision from the Tort Claims Act of "injuries [arising] out of or . . . in the course of activity incident to service":

The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the

Court to read that Act as excluding claims of that character.

In *Muniz,* which involved not a serviceman's claim but a Tort Claims Act suit by a federal prisoner, the Court, in distinguishing the serviceman's case so as to justify allowing the prisoner's suit, stated that "in the last analysis, *Feres* seems best explained by" the language quoted above from *Brown.* 374 U.S. at 162, 83 S.Ct. at 1858. *See generally* Hale v. United States, 416 F.2d 355, 358–60 (6th Cir. 1969).

60 (6th Cir. 1969). The *Feres* test has the virtue of simplicity, always an important consideration, while Hass's test would present difficult fact questions in every instance. *See Henninger, supra,* at 815–16. And the *Feres* test is supported by cogent policies. *See Muniz, supra,* 374 U.S. at 159, 83 S.Ct. 1850; *Feres, supra,* 340 U.S. at 141–45, 71 S.Ct. 153.

Whether Hass was engaged in activity incident to his military service, and thus barred from suit by the *Feres* doctrine, is a fact question. "Incident to service" is not, of course, a narrow term restricted to actual military operations such as field maneuvers or small arms instruction. It has been held that a member of the military is engaged in activity incident to his military service when he is enjoying a drink in a noncommissioned officers club, *Richardson v. United States,* 226 F.Supp. 49 (E.D.Va.1964), and when he is riding a donkey during a ballgame sponsored by the Special Services division of a naval air station, *Keisel v. Buckeye Donkey Ball, Inc.,* 311 F.Supp. 370 (E.D.Va.1970), and while swimming in a swimming pool at an airbase, *Chambers v. United States,* 357 F.2d 224 (8th Cir. 1966).

■ Although relevant to the ultimate fact inference to be drawn, it is not, we think, essential to application of the *Feres* doctrine that the injury to the serviceman have been caused by another member of the military rather than a civilian employee of the military. *United States v. Lee,* 400 F.2d 558, 561 (9th Cir. 1968), *cert. denied,* 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969); *Gamage v. Peal,* 217 F.Supp. 384, 389 (N.D. Cal.1962).

■ We think it might suffice here to bar this suit that (as found by the district court) the stable was owned and operated by the government and that a Marine officer was in charge of it and that servicemen could be disciplined for misconduct while using it.[2] Recreational activity provided by the military can reinforce both morale and health and thus serve the overall military purpose.[3] The district court found that Russ and Williams worked as hired managers under the control and supervision of a military officer. Their civilian status did not affect their job performance, and under such circumstances we hold that their civilian status does not operate to prevent application of the *Feres* doctrine.[4]

---

2. Hass has challenged some of the district court's findings. First, he argues that since Russ was the stable manager, the district court's finding that "the Special Services Officer has the responsibility [of] managing and regulating the stables" was incorrect. But we interpret the finding to be that the Special Services Officer had *ultimate* responsibility for the stables, as opposed to the day-to-day responsibility vested in Russ. The documents introduced on the motion for summary judgment, specifically Air Station Order 1700.-5B(4)(b), the Regulations for the Use of the Riding Stables at § 1102, and the contract between the Special Services Officer and Russ, make it clear that ultimate responsibility lay with the Special Services Officer. Second, Hass challenges the finding that "military personnel can be reported to their commanders for disciplinary action if they disregard stables' regulations," on the ground that no evidence indicated whether such discipline could include subjection to the Uniform Code of Military Justice. We consider Hass's argument frivolous: it is enough, for purposes of a finding that Hass was subject to "military discipline,"

that under the Regulations, *supra,* §§ 1107.6 & 1115–16 he could be reported to his Commanding General and could lose his stable privileges by order of the Special Services Officer.

We do agree with Hass that the district court's finding that "the Government obviously supports the stables" is not supported by the record. In fact, since the stable is a nonappropriated fund activity and is apparently supported by self-generated funds (from the hourly charges for mounts) and Marine Corps Exchange profits, the finding seems contrary to the undisputed evidence. Our agreement with Hass on this point does not affect our decision to affirm, however, for we do not consider the source of the operating funds important.

3. There was a time when equestrianism was itself a military skill, *e. g.,* as recently as the 1930's units of the famous Horse Marines were stationed in northern China.

4. In *Brooks* the Army truck that hit claimants' car was driven by a civilian, but the Supreme

*Cf. Lee, supra,* at 561–62; *United Air Lines, Inc. v. Wiener,* 335 F.2d 379, 396–98, 402 (9th Cir. 1964), *cert. denied,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); *Layne v. United States,* 295 F.2d 433 (7th Cir. 1961), *cert. denied,* 368 U.S. 990, 82 S.Ct. 605, 7 L.Ed.2d 527 (1962).

■ We hold that an active-duty serviceman, temporarily in off-duty status and engaged in recreational activity on a military base, cannot sue the United States for the alleged negligence of another serviceman or civilian employee of the military. *Cf. Chambers, supra; Keisel, supra; Richardson, supra.*

## II.

### Claim Against Civilian Employees of Military

The district court held Russ and Williams immune from liability under an extension of *Barr v. Mateo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). We believe the principle of *Barr,* when applied to this case, becomes too attenuated to protect these defendants.

In *Barr* the Supreme Court held that the Director of the Office of Rent Stabilization was immune from a libel action growing out of a press release issued in the course of his duties. Lower courts have accorded similar immunity to federal officials and employees lower than the one in *Barr, see, e. g., Sowders v. Damron,* 457 F.2d 1182 (10th Cir. 1972) (IRS agent); *Garner v. Rathburn,* 346 F.2d 55 (10th Cir. 1965) (Roads and Grounds Maintenance Foreman on Air Force base); and have granted immunity for negligent acts as well as intentional torts, *see, e. g., Estate of Burks v. Ross,* 438 F.2d 230 (6th Cir. 1971); *Garner, supra.*

■ Unfortunately there is no litmus test for determining which officials and employees should receive the benefit of this judicially created immunity. In every case a court must make a delicate balance: the need to free the particular officer to perform his functions without the vexation of defending lawsuits arising from that performance, against the right of an aggrieved party to seek redress. *See Barr, supra,* 360 U.S. at 571–72, 79 S.Ct. 1335.

■ Although courts have tended to give the immunity an expansive scope in order to encourage in officials vigorous execution of their duties, *see Estate of Burks, supra,* at 234, there still comes a point at which the right of the aggrieved to redress outweighs any public benefit to be gained from permitting the particular officer to act totally unfettered by exposure to suit. *See Estate of Burks, supra,* at 235–36 (hospital director and doctor immune, but not nurses and nurses' assistants). We believe that point is passed in this case. Russ and Williams are simply hired hands who run the stables on a day-to-day basis. As far as we can tell they have no functions that can realistically be termed discretionary. They do not even make the regulations that govern the stables. All they do is care for the horses and rent them out. Of course, as Russ points out in his affidavit, their duties do involve decisions on which horses are suitable for rental, and they do administer riding tests to determine which horses particular Marines are capable of riding. But we believe these are not the kinds of decisions the Supreme Court in *Barr* had in mind when it spoke of "discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority." 360 U.S. at 575, 79 S.Ct. at 1341.[5]

Court simply mentioned that fact in passing and placed no emphasis upon it in reaching a decision. We infer implicit support for our position that a civilian is analogous to a serviceman when he is performing functions for the benefit of the military.

5. Hass also made a rather tentative argument that Russ was an independent contractor rather than an employee, and Williams an employee of Russ. He argued that for that reason they could not benefit from the *Barr*-type immunity, apparently on the theory that it ex-

Although we reject the district court's application of *Barr*-type immunity, we uphold its dismissal of the action against Russ and Williams because we believe they are entitled to the benefit of another judicially created immunity. This is the immunity of one serviceman from suit by another, recognized by the Supreme Court in *Feres,* 340 U.S. at 141, 71 S.Ct. 153. As one lower federal court has recently stated, citing numerous case authorities:

> It is established that members of the United States military service are immune from recovery, in suits brought by fellow members of the military service, for service-connected injuries caused by their negligent acts, either ministerial or discretionary in nature, performed in the line of duty.

*Roach v. Shields,* 371 F.Supp. 1392, 1393 (E.D.Pa.1974). Although immunity probably originated as an immunity of superior officers, based upon the necessity of their unfettered exercise of command, *cf. Feres, supra,* 340 U.S. at 141, 71 S.Ct. 153; *Bailey v. Van Buskirk,* 345 F.2d 298 (9th Cir. 1965), *cert. denied,* 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966), it clearly exists now between servicemen of any rank. *Mattos v. United States,* 412 F.2d 793, 794 (9th Cir. 1969).

The only possible ground for not affording such immunity to Russ and Williams would be their technical status as civilian employees of the Marines rather than servicemen. The broad rationale behind the intra-service immunity is the maintenance of harmony within the service, and it seems to us that a suit against Special Services employees, who function solely for the benefit of the servicemen, would be just as disruptive of harmonious relations as would a suit against a fellow serviceman. Moreover, it would be absurd to hold stable hands responsible for conduct that may have been dictated by a Marine officer who is himself immune from liability. We hold, therefore, that Russ and Williams are immune from suit by a Marine based on the allegedly negligent performance of their duties.[6]

The judgment below will be Affirmed.

---

tends only to government employees. We are not so sure that the immunity could not, in an appropriate case, extend to government contractors as well as employees. *Cf.* Gamage v. Peal, 217 F.Supp. 384, 389 (N.D.Cal.1962). But we need not decide because we agree with the district court that the relevant documents show Russ and Williams to be employees, and because we have decided that *Barr* cannot be extended to persons performing such functions whether they are called employees *or* contractors.

6. In analogizing Russ and Williams to military personnel, we are not unaware that Congress has distinguished such civilian employees of non-appropriated fund activities from military personnel for many purposes. *See* 5 U.S.C. § 2105(a), (c) (Supp.1974). *Cf.* n. 4 *supra.*