**Mary Ellen DAVIS**

v.

**UNITED STATES of America DEPARTMENT OF the ARMY.**

**Civ. No. Y–84–462.**

United States District Court,
D. Maryland.

Feb. 13, 1985.

Charles E. Wood, Laurel, Md., for plaintiff.

Elizabeth H. Trimble, Asst. U.S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

## I. BACKGROUND

This action involves a claim for damages against the United States Department of the Army under the Federal Tort Claims Act (FTCA or the Act), 28 U.S.C. § 1346(b). The complaint alleges that the plaintiff, a Maryland resident, was admitted to the Walter Reed Army Medical Center on or about August 5, 1981. She was approximately 24 weeks pregnant at the time of her admission, and on that day gave birth to a female fetus weighing about 650 grams. The fetus was unable to breathe at birth and was pronounced dead after repeated attempts at resuscitation failed. Shortly thereafter, the plaintiff requested that the remains of the fetus be turned over to her for final disposition. She was informed subsequently that her request would not be granted as the remains of the fetus purportedly had not been preserved but instead had been disposed of pursuant to a hospital policy which called for the classification of a fetus under the uterogestational age of six months as a surgical specimen and also called for the disposal of such specimens. The plaintiff alleges that this conduct by employees of the defendant deprived the plaintiff of her right to provide her child with a proper burial and as a result she has suffered "great mental anguish and emotional distress" and has had to seek "psychological aid and attention." [1]

On or about October 12, 1982, plaintiff filed a claim for administrative settlement with the Department of the Army as required by 28 U.S.C. § 2675(a) [2] for one hundred thousand dollars ($100,000.00) in damages. This claim was denied in writing by the Department of the Army on August 8, 1983, and the plaintiff then brought this action. The defendant now seeks dismissal of the plaintiff's claim for want of jurisdiction and failure to state a claim upon which relief may be granted pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. In the alternative, defendant requests summary judgment in its favor in accordance with Rule 56 of the Federal Rules of Civil Procedure.

## II. THE FEDERAL TORT CLAIMS ACT

In enacting the Federal Tort Claims Act in 1946,[3] Congress waived the sovereign immunity of the United States and subjected it to suit:

> for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the Act or omission occurred.

28 U.S.C. § 1346(b) (1976).

The FTCA provides that members of the armed forces of the United States are deemed to be employees of the federal government. 28 U.S.C. § 2671. There are 12 statutory exceptions to the FTCA's waiver of immunity; however, none absolutely bars suits by members of the armed forces against the federal government although one of the Act's exceptions exempts the federal government from liability on

---

**1.** Complaint, ¶ 11.

**2.** This section provides that:
   "[a]n action not be instituted upon a claim against the United States for money damages for injury ... or personal injury or death caused by any employee of the Government while acting within the scope of his office or

employment, unless the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing..."

**3.** Pub.L. No. 79–601, tit. IV, § 401, 60 Stat. 812 (1946) (codified in various sections of 28 U.S. C.).

any claim arising out of the combat activities of military forces in time of war. 28 U.S.C. § 2680(j).

Nonetheless, the question of the liability of the United States to members of its armed forces has perplexed courts and resulted in divergent lines of decision which have been, at best, difficult to reconcile, ever since the FTCA was enacted. *See Johnson v. United States*, 704 F.2d 1431 (9th Cir.1983) (Tuttle, S.J. (11th Cir.), sitting by designation). Although it was originally maintained that the FTCA did not permit suits against the United States by members of the military, this argument was rejected by the Supreme Court in *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), when it held that servicemen could recover under the Act for injuries resulting from the negligence of an employee of the government when the accident did not occur "incident to the plaintiff's military service." *Johnson*, 704 F.2d at 1435, citing *Brooks*, 337 U.S. at 52, 69 S.Ct. at 920. However, in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Court explicitly enunciated the judicially created "incident to military service" exception to the FTCA in holding that "the Government is not liable under the ... Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. Consequently, the *Feres* court precluded three suits[4] brought by military personnel while on active duty and not on furlough who allegedly were injured due to the negligence of armed forces personnel. *Id.* at 138, 71 S.Ct. at 155.

The *Feres* court offered three basic rationales for its "incident to military service" exception to the FTCA; it recognized the distinctly federal relationship between the United States and its armed service personnel, the presence of an alternative military compensation system, and the need to protect the military disciplinary system.

See generally *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665 (1977) (summarizing the reasons for the *Feres* court's "incident to service" exception). Decisions subsequent to *Feres* have substantially weakened the first rationale as it applies with equal force to other federal agencies that are liable for the tortious conduct of their employees under the FTCA. *Johnson*, 704 F.2d at 1435. "The second rationale—the existence of an alternative compensation system has been applied [with some apparent] inconsistency ..." *Id.; compare Feres*, 340 U.S. at 140, 71 S.Ct. at 156 and *Stencel*, 431 U.S. at 671–72, 97 S.Ct. at 2057–58 (both cases mention the availability of an alternative compensation scheme to justify the "incident to service" exception to the FTCA) *with United States v. Brown*, 348 U.S. 110, 113, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954), and *Brooks*, 337 U.S. at 53, 69 S.Ct. at 920 (both of these cases seemingly reject this rationale for upholding governmental immunity). Thus, some federal courts have suggested that the most persuasive justification for the *Feres* doctrine is the potential impact of civil suits on military discipline and interests, *e.g., Johnson*, 704 F.2d at 1436, 1440, quoting *United States v. Muniz*, 374 U.S. 150, 159–62, 83 S.Ct. 1850, 1856–58, 10 L.Ed.2d 805 (1963) (incident to service exception "best explained" by disciplinary rationale), and they have accordingly tailored their inquiry to determine "whether or not a service member's activities at the time of injury are of the sort that could harm the disciplinary system if litigated in a civil action." *Johnson*, 704 F.2d at 1439; *but see Hall v. United States*, 451 F.2d 353, 354 (1st Cir.1971). These courts have held that the *Feres* bar should apply only where there is a "relevant relationship between the service member's behavior and the military interests that might be jeopardized by civil suits,"

**4.** The case of *Feres v. United States,* 177 F.2d 535 (2d Cir.1949), was considered together with *Jefferson v. United States,* 74 F.Supp. 209, (D.Md. 1947), *aff'd,* 178 F.2d 518 (4th Cir.1949), and

*Griggs v. United States,* 178 F.2d 1 (10th Cir. 1949), *reh'g denied,* 178 F.2d 1 (1950). *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

*Johnson,* 704 F.2d at 1440, and where there is a "causal connection between the injury occurrence and the injured person's military service," *Camassar v. United States,* 400 F.Supp. 894, 897 (D.Conn.1975), to the extent that a civil suit would "undermine the traditional concepts of military discipline." *Downes v. United States,* 249 F.Supp. 626, 628 (E.D.N.C.1965).

▮ While this Court finds the reasoning of these courts to be persuasive, it is nonetheless compelled to apply the Fourth Circuit's strict interpretation of the *Feres* doctrine. The Fourth Circuit has had several opportunities to consider *Feres* and has closely adhered to the Supreme Court's original formulation of the doctrine rather than narrowly construing the "incident to service" exception so that the application of *Feres* may be limited to those cases in which a claimant's injury is directly related to his or her military duties. This close adherence to *Feres* has resulted in the Court's persistent preclusion of suits brought by military personnel "while on active duty and not on furlough, who are injured due to the negligence of others in the armed forces," regardless of whether or not the injury to the claimant arises out of activities related specifically to military duty. *Hass v. United States,* 518 F.2d 1138 (4th Cir.1975), quoting *Feres,* 340 U.S. at 138, 71 S.Ct. at 155; *see Yolken v. United States,* 590 F.2d 1303 (4th Cir.1979); *Buckingham v. United States,* 394 F.2d 483 (4th Cir.1968). Most recently in *Brodine v. United States,* 735 F.2d 1353 (4th Cir.1984) (unpublished), the Fourth Circuit reiterated its strict adherence to *Feres* in noting that " '[i]ncident to service' is not a narrow term, and it is sufficient that the claimant, while on active duty and not on furlough, sustained injury due to the negligence of others in the armed forces." *Id.,* slip op. at 2 quoting *Feres,* 340 U.S. at 138, 71 S.Ct. at 155.

In *Feres* itself, the Supreme Court considered three cases,[5] two of which involved incidents of military physicians' malpractice in which claimants' medical operations

bore no relationship to their military duties whatsoever. *Jefferson,* 178 F.2d at 519; *Griggs,* 178 F.2d at 2–3. The application of the "incident to service" exception to the two cases in *Feres* which involved medical malpractice unrelated to the military duties of the claimants has provided the impetus in some circuits for broad denials of recovery for active duty tort claimants. *E.g., Yolken,* 590 F.2d at 1303 (4th Cir.); *Hass,* 518 F.2d at 1138 (4th Cir.); *Brodine,* 735 F.2d 1353, slip op. at 5 (4th Cir.); *Labash v. United States Dept. of the Army,* 668 F.2d 1153, 1155 (10th Cir.1982); *Collins v. United States,* 642 F.2d 217, 220 (7th Cir.1981), *cert. denied,* 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 975. Even without a nexus between a claimant's injury and his other military duties, such doctor-patient relationships have been held to be incident to military service, thus requiring recourse to *Feres* "because the serviceman is taking advantage of medical privileges granted only to military personnel." *Harten v. Coons,* 502 F.2d 1363, 1365 (10th Cir.1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975); *Lowe v. United States,* 440 F.2d 452, 453 (5th Cir.1971), *cert. denied,* 404 U.S. 833, 92 S.Ct. 83, 30 L.Ed.2d 64 (1971).

Indeed, it is precisely this factor which distinguishes the instant case from *Johnson,* 704 F.2d 1431, and renders the plaintiff's reliance thereon legally unavailing, especially in light of this circuit's well settled law precluding recovery in such cases. In *Johnson,* a serviceman who held an off-duty job as a bartender at an NCO club and who was returning from an after-hours party at the club was injured in an automobile accident on a military base. In a well reasoned opinion, the *Johnson* court recognized that active duty service members injured by the medical malpractice of military doctors usually have been barred from suing under the FTCA because their injuries have been considered to be "incident to service;" the plaintiffs would not have been privileged to take advantage of the

---

5. *See supra* note 4.

[medical] benefits but for their military status." *Id.* at 1438–39 (citation omitted). The court distinguished the case before it from those cases in which recovery had been denied because the alleged injury arose out of the enjoyment of those benefits accruing from the plaintiff's military status. It determined that the dispositive factor in the military medical malpractice cases did not preclude recovery in the case because:

> Johnson's employment at the NCO Club during his off-duty hours can hardly be characterized as a privilege or benefit incident to his military service. Unlike the soldiers using military medical facilities or participating in recreational activities sponsored by the military, Johnson held a paying job at the NCO Club. The job is identical with those routinely performed by civilian bartenders. Indeed, Johnson's after-hours employment at the NCO Club cannot logically be distinguished from second jobs held by other off-duty military personnel. *See, e.g., Mills v. Tucker*, 499 F.2d 866 (9th Cir. 1974) (Navy petty officer can sue government under FTCA for injuries sustained on military road while returning to base from his off-duty job as a cook). Thus, to characterize Johnson's moonlighting during his off-duty hours as a benefit incident to military service would distort both precedent and the rationale underlying Feres.

*Johnson,* 704 F.2d at 1439.

In contrast, the instant case involves a benefit and privilege incident to the plaintiff's military service and thus falls squarely within the category of cases to which the Fourth Circuit has applied the *Feres* doctrine. *E.g., Yolken,* 590 F.2d 1303; *Haas,* 518 F.2d 1138; *Buckingham,* 394 F.2d 483; *Brodine,* 735 F.2d 1353. Moreover, this is an action where the defendants' alleged wrongful conduct occurred as a result of a "decision requiring military expertise or judgment" and thereby implicates a concern for military discipline, the most persuasive rationale for applying the *Feres* doctrine to suits against the various branches of the armed services.[6] *See Johnson,* 704 F.2d at 1438, 39. Therefore, the case now before the Court is certainly one to which the *Feres* doctrine should be applied according to controlling Fourth Circuit precedent. Furthermore, the reasoning of the Ninth Circuit in *Johnson* does not suggest a contrary result.

Although this Court must accept the allegations in the complaint as true for the purpose of resolving a motion to dismiss, 5 Wright and Miller, *Federal Practice and Procedure: Civil* § 1357 at 594 (1969) (numerous citations omitted), the plaintiff's claims against the United States Department of the Army nonetheless must be dismissed because this defendant is not subject to suit under the FTCA. *Feres,* 340 U.S. 135, 71 S.Ct. 153; *see, e.g., Yolken,* 590 F.2d 1303. Consequently, the plaintiff has failed to state a claim upon which relief may be granted and dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate.

### III. PLAINTIFF'S CLAIMS UNDER THE LAW OF THE DISTRICT OF COLUMBIA

In addition to the *Feres* bar against the plaintiff's claims, these claims also are not

---

**6.** In determining whether to grant a motion to dismiss, a court primarily considers the allegations in the complaint. However, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. Wright and Miller, 5 *Federal Practice and Procedure: Civil* § 1357, at 593 (1969). Accordingly, in resolving this motion to dismiss, the Court notes, but does not rely on, the uncontroverted contention in the defendant's memorandum of law in support of its motion to dismiss, that the conduct of its employees (in disposing of the fetus) was in accordance with the established policies and practices of the Walter Reed Army Medical Center. Defendant's memorandum, at 4–5.

Under the reasoning expressed in *Johnson,* this contention, if true, would *further* justify the application of *Feres* in the case now before the Court because the policy with which the defendant's employees acted in accordance reflects precisely the kind of judgment utilized by military authorities in formulating rules, practices, and procedures, which *Feres* was designed to insulate from judicial review. *Johnson,* 704 F.2d at 1440.

actionable under the law of the District of Columbia.[7]  Many jurisdictions do not recognize any property rights in a corpse although some common law jurisdictions do recognize the rights which vest in the spouse or next of kin of the deceased to inter the deceased's body.  *See* 48 A.L.R.3d 240 (1973).

In support of her claim for damages, the plaintiff relies on *Steagall v. Doctor's Hospital,* 171 F.2d 352 (D.C.Cir.1948),[8] to establish the right to bury, dispose of, or otherwise possess the body of a deceased relative in the District of Columbia.[9]  However, in a later case, the Court of Appeals for the District of Columbia commented that *Steagall* should not be interpreted so broadly as to establish a right to possess, preserve, or bury a dead body with the violation of that right being an actionable tort.  *District of Columbia v. Smith,* 436 A.2d 1294, 1298 (D.C.Ct.App.1981).  Because "*Steagall* simply decided that a surviving spouse has the primary right of action, [a]nything pertaining to the scope or definition of the tort involved must necessarily be dicta."  *Id.* at 1298.

■  Generally, the withholding of a corpse may be actionable and lead to recovery for emotional distress, without physical effects, where there has been willful, malicious, or outrageous conduct in withholding the corpse.  *Id.* at 1297 note 2, citing *Liability for Withholding A Corpse,* 48 A.L.R.3d 240 (1973); *Chisum v. Behrens,* 283 N.W.2d 235 (S.D.1979).  In *Waldon v. Covington,* 415 A.2d 1070 (D.C.App.1980), the Appeals Court noted the inherent difficulty in proving subjective intent with any certainty and recognized that such intent must be inferred from the flagrant nature of the conduct of the accused.  *Id.* at 1070.  The *Waldon* court then noted that to prove

intentional infliction of emotional harm in the District of Columbia, the conduct of the defendant must be beyond all bounds of decency and without just cause or excuse.  *Id.* at 1076–77, citing *Clark v. Associated Retail Credit Men,* 105 F.2d 62, 66–67 (D.C.Cir.1939) (and characterizing *Clark* as a landmark case in the District).  Intentional and outrageous withholding has been established in other jurisdictions where, for example, a motorist struck and killed the plaintiff's son and then hid the body, and later buried it in a field.  *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118, 119 (1970).

■  Here, there is no allegation in the complaint that the hospital committed a malicious or outrageous act in disposing of the fetus in a manner stated to be in accordance with its established hospital policy.  The conduct of the defendant's employees was not inconsistent with the District of Columbia Code Ann. Section 6–201(a)(1) (1976), which did not require the preparation of a birth certificate for any stillborn fetus delivered before the sixth month of pregnancy.  Thus, the plaintiff has failed to allege in her complaint or in her subsequent submissions to the Court that the defendant or its employees committed an act that was beyond all bounds of decency and without just cause or excuse.  *Waldon,* 415 A.2d at 1076–77.

■  Finally, recovery for negligent, as opposed to intentional infliction of emotional harm must be accompanied by a physical invasion.  *Garber v. United States,* 578 F.2d 414 (D.C.Cir.1978).  Originally, a substantial injury was required for a plaintiff to recover in an action for negligent infliction of emotional harm.  However, the "substantialness" requirement has been

**7.**  The FTCA makes the United States liable in the appropriate circumstances "in accordance with the law of the place where the [tortious] act or omission occurred."  28 U.S.C. § 1346(b) (1976).

**8.**  *Steagall* was a case which involved a civil action brought by a widow and her two sons against a hospital for performing an unauthorized autopsy.  The trial court dismissed the

claims for the two sons on the ground that the widow had the sole right of action.  On review, the Court of Appeals affirmed, stating that the spouse had the "right to possess, preserve, and bury or otherwise dispose of [the] dead body" and if no spouse survived then that right vested in the next of kin.  *Steagall,* 171 F.2d at 353.

**9.**  Plaintiff's memorandum, at 2.

abandoned and an accompanying physical injury of any magnitude will suffice. *Id.* at 415 n. 2. Here, no physical injury has been alleged.

Because an intentional tort cannot be established under the law of the District of Columbia by the facts in this complaint, and a negligence action is precluded because no accompanying physical injury has been alleged, the plaintiff's claim must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Additionally, the grant of immunity to the United States Department of Army resulting from the *Feres* doctrine also requires that the plaintiff's claim be dismissed.