**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1113**

JOSHUA E. FRANKEL,

       Plaintiff – Appellant,

   v.

UNITED STATES OF AMERICA; JAVEN EVONNE DAVIS, solely in her capacity of an uninsured driver pursuant to Virginia Code § 38.2-2206, as amended and provided,

       Defendants – Appellees,

and

GOVERNMENT EMPLOYEES INSURANCE COMPANY,

       Intervenor.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Mark S. Davis, Chief District Judge.  (2:18-cv-00107-MSD)

Submitted:  March 16, 2020                        Decided:  April 14, 2020

Before NIEMEYER, MOTZ, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Michael Francis Imprevento, BREIT DRESCHER IMPREVENTO, PC, Virginia Beach, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Lauren A. Wetzler, Chief, Civil Division, Alexandria, Virginia, Sean D. Jansen, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia; Richard A. Saunders, FURNISS, DAVIS, RASHKIND & SAUNDERS, Norfolk, Virginia, for Appellees

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After Petty Officer Joshua Frankel, a U.S. Navy employee, was struck by a car driven by a fellow officer on Naval Station Norfolk, he filed a complaint pursuant to the Federal Tort Claims Act (the "FTCA") against the Government and against the officer solely in her capacity as an uninsured driver under Virginia law. The district court dismissed the complaint for lack of subject matter jurisdiction under *Feres v. United States*, 340 U.S. 135 (1950). Frankel appeals. For the reasons that follow, we affirm the judgment of the district court.

I.

At 7:37 a.m. on March 31, 2015, Frankel was in a designated crosswalk within Naval Station Norfolk when he was hit by a car driven by Ensign Javen Evonne Davis. At the time of the accident, Davis was driving her personal vehicle to purchase a birthday cake for another officer, as instructed by her executive officer.

Although it is undisputed that Frankel was heading to the Naval Station gym at the time he was hit, the parties contest his status at the time of the accident, and specifically whether he was headed there of his own volition or under orders. Frankel asserts he was heading to the gym of his own volition given that he was "not under any orders associated with his employment with the Navy, he was not on an official Navy assignment, and he was not on duty." J.A. 8. Further, according to Frankel, physical training was not mandatory for his job.

3

Nonetheless, Frankel acknowledges that at the time of the accident, he was on active duty status (as opposed to furlough). In addition, his supervisor averred that Frankel was required to report to the Naval Station gym that day at 7:30 a.m. to begin mandatory physical training for his job. Although Frankel disputes these specific facts, he agrees that his employment required him to a pass a semi-annual physical fitness assessment and that he had access to the Naval Station's gym only by virtue of his status as a member of the U.S. Navy. (Both the gym and Naval Station Norfolk restrict access to members of and those affiliated with the U.S. Armed Forces.)

Frankel filed a state court complaint against Davis asserting negligence in the operation of her motor vehicle. The Government removed the case to the district court and filed a notice of substitution pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"), 28 U.S.C. § 2679, which provides immunity to federal employees from common law tort claims arising out of acts undertaken as part of their official duties and substitutes the United States as the defendant in such cases.[1]

After Frankel's initial complaint was dismissed for failure to exhaust administrative remedies,[2] Frankel satisfied those prerequisites and then filed the instant two-count

---

[1] Pursuant to § 2679(d)(1), the Government certified that Davis was acting within the scope of her employment at the time of the incident.

[2] Following removal, the Government filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that the proper defendant was the United States and that the lawsuit was premature. Specifically, the Government asserted that under the FTCA, Frankel could not bring a suit seeking damages for personal injury stemming from the negligent or wrongful acts of any federal employee

complaint. The first count asserts a negligence claim against the Government under the FTCA, claiming that Davis, as a federal employee, failed to exercise reasonable care in operating her vehicle when she struck Frankel. The second count asserts a claim under Virginia's uninsured motorist statute, Va. Code Ann. § 38.2-2206,[3] which provides that a person injured in an accident by an otherwise immune vehicle operator may proceed against their own insurer. Specifically, the complaint alleges that Frankel had purchased uninsured motorist coverage from GEICO and that he was entitled to compensation from GEICO under this policy in the event that any named defendant was deemed immune from liability. In turn, the complaint named the Government and Davis as nominal defendants as to this claim to satisfy § 38.2-2206's requirements.

The Government and Davis moved to dismiss for lack of subject matter jurisdiction under *Feres*, which held that the Government is immune from FTCA claims arising from activities "incident to service" of military personnel. 340 U.S. at 146.

The district court granted the motion.[4] First, the court considered whether *Feres* barred Frankel's claim against the Government. As an initial matter, it observed that the

---

acting within the scope of her employment until: (1) Frankel had presented his claim to the appropriate federal agency; and (2) the claim was denied by that agency. The district court granted the motion, and the Navy later denied Frankel's notice of claim, thus satisfying those prerequisites to suit. *See* 28 U.S.C. §§ 1346(b), 2401(b), 2671.

[3] Although Va. Code Ann. § 38.2-2206 has been amended since 2015, the language at issue in this case has not changed.

[4] Before reaching the claims that are at issue on appeal, the court concluded that Frankel's other claims could not proceed against Davis because the prior lawsuit had established that Davis was acting within the scope of her federal employment such that she had absolute immunity. And because, the court concluded, this issue had already been resolved, Frankel was precluded from relitigating it. Frankel does not appeal this ruling.

Government had presented a factual challenge to subject matter jurisdiction, arguing that the jurisdictional facts—that is, those that bore upon whether Frankel's injuries arose "incident to service," such as the purpose of his gym visit—alleged in the complaint were incorrect. The court further observed that in ruling on a challenge to jurisdictional facts that were *not* intertwined with the underlying merits of the negligence claim, it was not required to assume those facts, as alleged in the complaint, were true. Rather, it could resolve the jurisdictional facts by "weigh[ing] the evidence and satisfy[ing] itself as to the existence of its power to hear the case." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (internal quotation marks omitted); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) ("Unless the jurisdictional facts are intertwined with the facts central to the merits of the dispute, the district court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits." (internal quotation marks omitted)).[5] Here, the evidence showed that Frankel was on duty, was on his way to a mandatory training, was hit by a fellow servicemember, and was on a military base with restricted access. As a result, the court ruled that Frankel's claim "falls squarely within the heart of the *Feres* bar." J.A. 201 (internal quotation marks omitted). The court further determined that, even if it did not resolve the jurisdictional facts and instead accepted Frankel's version

---

[5] The district court further determined that even assuming the facts relevant to the *Feres* bar were intertwined with the merits of the negligence action, jurisdictional discovery would be unnecessary "because the most relevant jurisdictional facts (the location of the accident, [Frankel's] duty status, the reason [Frankel] was walking to the gym) [we]re all within [Frankel's] own knowledge." J.A. 200.

6

of the facts as true—that he was off duty and headed to the gym of his own volition, and was hit by another off-duty servicemember—it would still find the claim barred by *Feres* because Frankel conceded he was on active duty status rather than furlough status, his Navy employment required him to pass a semi-annual physical fitness assessment, and he was attempting to patronize a gym that he had access to only by virtue of his status as a Navy servicemember.

Second, the court concluded that Frankel's uninsured motorist claim was barred. As the court observed, to proceed against an otherwise-immune defendant, Virginia law first required entry of judgment against that defendant. But because *Feres* prevented Frankel from obtaining that judgment, his uninsured motorist claim could not meet this threshold requirement. Further, the court concluded, because Virginia law did not permit Frankel to pursue his claim directly against his insurance company, it had to be dismissed.

Frankel appeals, arguing that the district court erred in ruling that his claims were barred by *Feres* and deciding this jurisdictional issue without further discovery. He also asserts that the court misapplied *Feres* to dismiss his uninsured motorist claim.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.


II.

We first consider whether the district court erred in concluding *Feres* deprived it of subject matter jurisdiction. The existence of subject matter jurisdiction under Rule 12(b)(1) is a question of law that this Court reviews de novo. *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017).

7

The FTCA provides a limited waiver of the Government's sovereign immunity, authorizing lawsuits against the United States for certain tort claims against federal employees acting within the scope of their duties in circumstances "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). But in *Feres*, the Supreme Court held that servicemembers cannot bring tort suits against the Government for injuries they incur that "arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146. *Feres* has since been applied "consistently to bar all suits on behalf of service members against the Government based upon service-related injuries." *United States v. Johnson*, 481 U.S. 681, 687–88 (1987).

Here, the district court concluded that Frankel's injuries arose "incident to service" because at the time of the accident Frankel was on active duty status and "his status as a Navy employee both gave him access to the on-base gym and required him to maintain a level of fitness." *Frankel v. United States*, 358 F. Supp. 3d 537, 543 (E.D. Va. 2019). Therefore, "his on-base injury occurring while he was traveling to a military exercise facility was directly connected to his military service, even if his workout was intended to be recreational." *Id*. (internal quotation marks omitted).

A.

On review, we conclude that the district court correctly determined that *Feres* barred Frankel's claim against the Government because the injury was a service-related one. We have previously concluded that "incident to service" is a broad term, encompassing more than just "actual military operations such as field maneuvers or small arms instruction."

8

*Hass ex rel. United States v. United States*, 518 F.2d 1138, 1141 (4th Cir. 1975). Rather, it is wide-reaching enough to "encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military." *Stewart v. United States*, 90 F.3d 102, 105 (4th Cir. 1996).

In this vein, we have determined that injuries that occur in the course of engaging in benefits or recreation stemming from or related to servicemember status arise "incident to service." For example, in *Hass*, this Court held that *Feres* barred the suit of an active-duty serviceman who, while temporarily on off-duty status, was injured while riding a horse he had rented from a military base Marine Corps stable. 518 F.2d at 1139. In reaching this conclusion, we observed that the stable was owned and operated by the Government; that a Marine officer was in charge of it; and that servicemembers could be disciplined for misconduct while using it. *Id.* at 1141–42. Ultimately, because "[r]ecreational activity provided by the military can reinforce both morale and health and thus serve the overall military purpose," *id.* at 1141, "an active-duty serviceman, temporarily in off-duty status and engaged in recreational activity on a military base, cannot sue the United States for the alleged negligence of another serviceman or civilian employee of the military," *id.* at 1142. Under the same rationale, courts have determined that a member of the military "is engaged in activity incident to his military service when he is enjoying a drink in a noncommissioned officers club, and when he is riding a donkey during a ballgame sponsored by the Special Services division of a naval air station, and while swimming in a swimming pool at an airbase." *Id.* (internal citations omitted); *see also Mariano v. United States*, 605 F.2d 721, 722–23 (4th Cir. 1979) (concluding injury arose "incident to service"

9

when off-duty officer was struck by a glass thrown by a fellow officer at a Naval Station club).

We have also concluded that a servicemember's injuries stemming from a car accident occur "incident to service" when they implicate his or her military status. As one example, in *Stewart* we concluded that a suit arising out of a servicemember's automobile accident injuries was barred by *Feres* when (1) he was on active-duty status at the time of the accident, rather than on furlough or any leave temporarily excusing him from his duties; (2) the collision occurred on the grounds of a military base; and (3) he "was engaged in activity directly related to the performance of military obligations" (specifically, "leaving one duty station to return to his residence [to shower and change clothes] in preparation for his next assignment"). 90 F.3d at 104–05; *see also Warner v. United States*, 720 F.2d 837, 839 (5th Cir. 1983) (per curiam) (observing that where an off-duty servicemember was on base and running a personal errand when a car accident occurred, his "presence on the military base was by virtue of his military status" and therefore militated in favor of finding a *Feres* bar); *Stansberry v. Middendorf*, 567 F.2d 617, 618 (4th Cir. 1978) (per curiam) (applying the rationale of *Hass* to an off-base car accident involving a servicemember because "the plaintiff was on active duty and not on furlough, and sustained injury due to the negligence of others in the armed forces").

Here, even accepting Frankel's version of the facts as true, his claims are barred by *Feres*.[6] According to his complaint, at the time of the accident, Frankel was (1) an active duty officer temporarily on off-duty status; (2) on a military base; and (3) heading to the base's gym in his free time. Under our precedent, these facts—limited off-duty status and presence on a military base by virtue of his military status—easily establish a connection between Frankel's injuries and his status as a member of the Navy. Further, as in *Hass*, Frankel was taking advantage of a benefit—access to the Navy gym—that he only enjoyed by virtue of his status as a servicemember, as well as engaging in an activity that arguably amounted to a "[r]ecreational activity provided by the military [to] reinforce both morale

---

[6] Frankel's central argument to the contrary arises from the *Feres* bar's underlying rationales. The Supreme Court has emphasized three reasons for the bar: (1) "the 'distinctively federal' relationship between the government and its soldiers[, which] would be undermined by holding military personnel accountable under the variations in state tort law according to the situs of the alleged tort"; (2) "the comprehensive system of statutory benefits granted to service members" intended by Congress "to be the sole remedy for service related injuries"; and (3) "the fear that frequent judicial inquiry into military decision making would have a deleterious impact on military discipline and effectiveness." *Appelhans v. United States*, 877 F.2d 309, 311 (4th Cir. 1989).

Frankel asserts that none of these rationales apply to his situation such that *Feres* does not prohibit his suit. As an initial matter, he asserts that the first two rationales are no longer viable as a matter of law and policy—a proposition which has been rejected by the Supreme Court. *See id.* (Further, given that Frankel was on active-duty status and engaging in a benefit tied to boosting servicemember "morale and health," *Hass*, 518 F.2d at 1141, we agree that the "distinctively federal" rationale was implicated.) In turn, although Frankel argues that while the military discipline rationale was not implicated because there was no military relationship between Frankel and Davis, we note that this Court has previously considered and rejected a similar argument. *See Stewart*, 90 F.3d at 106 (observing that this rationale would apply if the plaintiff's claims were of the type that would involve an "assessment of military traffic, vehicle, and other regulations" and potentially require "the service members involved, any eyewitnesses, and military medical personnel . . . to testify in court as to each other's decisions and actions" (internal quotation marks omitted)).

11

and health and thus serve the overall military purpose." 518 F.2d at 1141. In sum, Frankel's situation appears to be materially indistinguishable from the one in *Hass* and other cases warranting application of the *Feres* bar. *See id.* at 1141–42. Therefore, we conclude the district court did not err in determining that it lacked subject matter jurisdiction under *Feres*.

## B.

Next, Frankel argues that the district court further erred by denying his requests for jurisdictional discovery and thereby failing to develop a necessary factual record. The denial of a request for jurisdictional discovery is reviewed for an abuse of discretion. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). "[W]hen the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

We conclude the district court's decision not to engage in further jurisdictional discovery did not constitute an abuse of discretion. As discussed in the prior section, even if the Court were to accept Frankel's version of the facts as true—that he was off duty and going to the Navy gym on his own time, that Davis was running a personal errand, and that the Naval Base was accessed by members of the public—we agree with the district court that his claims would still be barred by *Feres*. At bottom, Frankel, an active-duty officer, was on a military base heading to the base's gym in his free time when he was struck by Davis's car. These facts clearly establish a connection between Frankel's injuries and his

12

status as a member of the Navy. In turn, the applicability of the *Feres* bar—which concerned whether the injury arose incident to Frankel's military service—did not require the district court to determine any issue central to the merits of his tort claim, which would presumably turn on the alleged breach of Davis's duty as a motorist to safely operate her car.

## III.

Finally, we turn to Frankel's uninsured motorist claim. Virginia's uninsured motorist statute[7] provides that a plaintiff injured in an automobile accident in which the owner or operator of the vehicle is deemed otherwise immune from suit [8] may proceed to recover damages against his or her insurer:

> [T]he immunity from liability for negligence of the owner or operator of a motor vehicle shall not be a bar to the insured obtaining a judgment enforceable against the insurer for the negligence of the immune owner or operator, and shall not be a defense available to the insurer to the action brought by the insured, *which shall proceed against the named defendant* although any judgment obtained against an immune defendant shall be entered in the name of "Immune Defendant[.]"

Va. Code Ann. § 38.2-2206(F) (emphasis added). In turn, Virginia courts have interpreted this statute to require that a plaintiff seeking recovery under his uninsured motorist policy

---

[7] Virginia Code § 38.2-2206(A) generally requires insurance companies to provide uninsured motorist coverage: no insurance policy "relating to the ownership, maintenance, or use of a motor vehicle shall be issued or delivered" in Virginia "unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle[.]"

[8] "[U]ninsured motor vehicle[s]" include ones for which "the owner or operator of the motor vehicle is immune from liability for negligence under the laws of the Commonwealth or the United States." Va. Code Ann. § 38.2-2206(B).

13

against an otherwise immune defendant must first procure a judgment against that immune defendant. Only after obtaining such a judgment may the plaintiff then enforce it against his insurer. As the Virginia Supreme Court has elaborated, "Virginia precedent indicates that the duty owed by [an uninsured motorist] carrier to its insured [under § 38.2-2206(A)] is to pay its insured the damages he or she is '*legally entitled to recover*'[.]" *Manu v. GEICO Cas. Co.*, 798 S.E.2d 598, 603 (Va. 2017) (emphasis added). "[T]he phrase 'legally entitled to recover' imposes as a condition precedent to [an uninsured motor] carrier's obligation to pay its insured[] that the insured obtain a judgment against the uninsured tortfeasor whose actions come within the purview of the [uninsured motorist] policy." *Id.* at 605.[9]

The district court thus concluded that to have proceeded with an uninsured motorist claim against Davis or the Government, Frankel would have first been required to obtain a judgment. But because *Feres* would bar such a lawsuit (to say nothing of a judgment) against the United States, and the Westfall Act would similarly bar any such lawsuit against

_____

[9] Indeed, courts interpreting § 38.2-2206 have consistently found that judgment is the event which determines legal entitlement to recovery. *E.g.*, *Nationwide Mut. Ins. Co. v. Hylton*, 530 S.E.2d 421, 423 (Va. 2000); *United Servs. Auto. Ass'n v. Nationwide Mut. Ins. Co.*, 241 S.E.2d 784, 787 (Va. 1978); *Midwest Mut. Ins. Co. v. Aetna Cas. & Sur. Co.*, 223 S.E.2d 901, 904 (Va. 1976); *see also O'Brien v. Gov't Emps. Ins. Co.*, 372 F.2d 335, 341 (3d Cir. 1967) (interpreting Virginia's predecessor statute to § 38.2-2206); *Satterfield v. Gov't Emps. Ins. Co.*, 287 F. Supp. 3d 1285, 1295 & n.16 (W.D. Okla. 2018) (interpreting § 38.2-2206); *Ryan v. 21st Century Centennial Ins. Co.*, No. TDC-15-3052, 2016 WL 3647612, at *5–6 (D. Md. June 30, 2016) (same); *Boggs-Wilkerson v. Anderson*, No. 2:10cv518, 2011 WL 6934598, at *2 (E.D. Va. Nov. 17, 2011) ("In uninsured motorist cases, Virginia is among a small minority of states that requires the plaintiff first obtain judgment against the alleged tortfeasor before bringing direct action against the insurer."), *report and recommendation adopted by* 2011 WL 6934596, at *1 (E.D. Va. Dec. 30, 2011).

Davis, Frankel could not proceed with his uninsured motorist claim. On appeal, Frankel argues the district court erred in reaching this conclusion, contending that: (1) by naming Davis as the nominal defendant, Frankel was only seeking to fulfill § 38.2-2206(F)'s requirements, not hold her or the Government liable; (2) nothing in § 38.2-2206(F)'s language requires that the plaintiff first obtain a judgment against the named defendant; and (3) to interpret the statute in this manner would deny Frankel the contractual benefit of an insurance policy that he purchased for his protection.

We disagree. *Feres* provides that the United States is immune not merely from liability but also *from suit*.[10] *See Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 218 (4th Cir. 2012) ("[I]mmunity has consistently been administered as a protection against the burden of litigation altogether."). The Westfall Act provides the same as to Davis. *Osborn v. Haley*, 549 U.S. 225, 238 (2007) (observing that 28 U.S.C. § 2679 is "designed to immunize covered federal employees not simply from liability, but from suit"). Thus, any argument that the Government or Davis could serve purely as nominal defendants is unavailing. Further, the plain language of § 38.2-2206(F) provides that the suit "shall proceed against the named defendant." But given that *Feres* bars Frankel's suit against the Government— and the Westfall Act bars any suit against Davis—under the FTCA, there is no named defendant against whom judgment can be entered for purposes of § 38.2-2206(F). Therefore, Frankel's uninsured motorist claim cannot clear this initial statutory hurdle.

---

[10] And under the federal Constitution's Supremacy Clause, Virginia law cannot provide otherwise. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land[.]").

Finally, as the district court observed, although such a result "may seem inequitable," "unless and until the Virginia legislature modifies the statutory procedure set forth in Va. Code § 38.2-2206(F) to allow a [p]laintiff to proceed *directly against an insurer*" in circumstances such as this one, "such 'perceived unfairness' cannot be avoided." 358 F. Supp. 3d at 544. We therefore agree that Frankel's claim cannot proceed.

IV.

For the foregoing reasons, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*