## MATTIE BYRD PARKER v. QUINN-McGOWEN COMPANY, INC.

(Filed 14 October, 1964.)

**1. Dead Bodies § 1—**

Upon the death of husband or wife, the surviving spouse has the primary right to the custody of the body for burial and to direct and control its preparation therefor.

**2. Dead Bodies § 3—**

The person entitled to possession of a dead body for the purpose of burial may maintain an action for mental suffering against a person mutilating the dead body, either intentionally, or negligently, or by unlawful autopsy, and if such conduct is wilful or wanton, actually malicious or grossly negligent, punitive damages may also be recovered.

**3. Same—**

An autopsy and embalming are different in purpose and effect, and the mere fact of an unauthorized embalming, without more, does not constitute

such a mishandling or mutilation of the body as will support a cause of action.

PARKER, J., dissents.

APPEAL by plaintiff from *Bundy, J.,* May 1964 Civil Term of DUPLIN.

Action by a widow to recover compensatory damages for mental anguish allegedly caused by the unauthorized embalming of the body of her husband.

Plaintiff alleges: On April 25, 1963, her husband died under unusual circumstances. On that date his body was delivered to defendant's funeral home in Warsaw, where it was immediately embalmed and prepared for burial by the employees of defendant, all without the knowledge or permission of plaintiff or other relatives of the deceased. Notwithstanding that it is the general custom and duty of a funeral home to notify relatives of a deceased immediately upon receiving the body and to obtain their permission before embalming it, defendant's employees failed to notify the relatives of deceased or to obtain their permission to embalm his body, although they knew his identity and their address. Immediately upon learning that defendant had possession of her husband's body, plaintiff notified another funeral home to take possession of it "for preservation and burial" and the body was removed to that funeral home. In consequence of defendant's acts, plaintiff's feelings have been cruelly wounded and she has been made to suffer, both in body and in mind, to the extent of $50,000.

Defendant demurred to the complaint on the ground that it fails to state a cause of action. Judge Bundy entered an order·sustaining the demurrer and plaintiff appealed.

*James F. Chestnutt and Miles B. Fowler for plaintiff.*

*Beasley & Stevens and Nance, Barrington, Collier & Singleton for defendant.*

SHARP, J. Upon the death of a husband or a wife, the surviving spouse has the primary right to the custody of the body for burial as well as the preparation therefor. *Lamm v. Shingleton,* 231 N.C. 10, 55 S.E. 2d 810; *Kyles v. R. R.,* 147 N.C. 394, 61 S.E. 278; 15 AM. JUR., *Dead Bodies* § 9 (1938). Our law recognizes that the next of kin has a quasi-property right in the body — not property in the commercial sense but a right of possession for the purpose of burial — and that there arises out of this relationship to the body an emotional interest which should be protected and which others have a duty not to injure intentionally or negligently. The rights of one legally entitled to its custody are violated if another unlawfully withholds the dead body from him, *Bonaparte v. Funeral Home,* 206 N.C. 652, 175 S.E. 137.

Furthermore, the survivor has the legal right to bury the body as it was when life became extinct. *Kyles v. R. R., supra.* For any mutilation of a dead body the one entitled to its custody may recover compensatory damages for his mental suffering caused thereby if the mutilation was either intentionally or negligently committed, *Morrow v. R. R.,* 213 N.C. 127, 195 S.E. 383, or was done by an unlawful autopsy. If defendant's conduct was wilful or wanton, actually malicious, or grossly negligent, punitive damages may also be recovered. *Kyles v. R. R., supra.*

Hitherto, this Court has considered three types of tortious conduct involving the mistreatment of dead bodies: (1) the negligent mangling and dismemberment of bodies on railroad tracks by trains, *Morrow v. R. R., supra; Floyd v. R. R.,* 167 N.C. 55, 83 S.E. 12; *Kyles v. R. R., supra;* (2) unauthorized autopsies, *Gurganious v. Simpson,* 213 N.C. 613, 197 S.E. 163; *Stephenson v. Duke University,* 202 N.C. 624, 163 S.E. 698; and (3) the wrongful withholding of a body as security for unauthorized embalming, *Bonaparte v. Funeral Home, supra.*

In the instant case, the complaint discloses these sparse facts: The dead body of plaintiff's husband was delivered to the defendant funeral home. Without securing plaintiff's permission, defendant proceeded to embalm the body and prepare it for burial.

Does the complaint state a cause of action for the mishandling or mutilation of the body of plaintiff's husband?

Although a wife is entitled to the body of her husband in the condition it was in at death, and to bury it without embalming if she so desires, embalming is now considered a routine incident in the preparation of a body for burial and "a very proper service." *Konecny v. Hohenschuh,* 188 Iowa 1075, 173 N.W. 901; *accord, Sworski v. Simons,* 208 Minn. 201, 208, 293 N.W. 309, 312 (dissenting opinion of Holt, J.). Although it has been said that an undertaker's unauthorized embalming of a body received for burial constitutes mutilation similar to that involved in an autopsy, 17 A.L.R. 2d 770, 775, there is a distinct difference in the two operations. An autopsy is a violation of the body not intended to preserve it intact — quite the contrary — and is totally unrelated to its proper burial. True, except in the case of an inquest, the avowed purpose of an autopsy is to advance medical knowledge and thus alleviate suffering in the living. Nevertheless, because many persons regard an autopsy with extreme aversion, it may not legally be performed without the consent of the person having the duty to bury the body unless authorized by statute. G.S. 90-217. Embalming, on the other hand, creates no such repulsion. Although technically it may be included in the generic term *mutilation,* embalming involves no dis-

memberment or disfigurement and it is not popularly thought to be a mutilation. In our contemporary society it is regarded as the proper method of preparing a corpse for burial. Indeed, it is but one of the successfully standardized burial practices which have generated the high cost of dying.

No case has been called to our attention in which recovery has been sanctioned *solely* for an unauthorized embalming. The annotation *Undertaker — Civil Liability*, § 5, *Negligent or Unauthorized Embalming*, 17 A.L.R. 2d 770, 775, supplied the cases cited in the briefs. In those which would permit a recovery for unauthorized embalming there appears to be some additional major factor such as an unauthorized autopsy, mutilation other than the technical mutilation of embalming, a wrongful withholding of the body, or negligence. In *Bonaparte v. Funeral Home, supra,* defendant unlawfully withheld the body as security for the fee for the unauthorized embalming. *Kirksey v. Jernigan,* Fla., 45 So. 2d 188, 17 A.L.R. 766, dealt with facts similar to those in *Bonaparte, supra.* In *Sworski v. Simons, supra,* plaintiffs' son had committed suicide in jail. Without plaintiffs' knowledge, defendant coroner turned the body over to defendant undertaker, who embalmed it. When plaintiffs arrived to claim the body, the undertaker attempted to collect $37.50 for his services. Before plaintiffs were permitted to see their son's body, "the father had to sign some papers."

The companion cases of *Lott v. State* and *Tumminelli v. State,* 32 Misc. 2d 296, 225 N.Y.S. 2d 434, cited by plaintiff, incidentally involved an unauthorized embalming. These cases, however, were not brought against undertakers. Mrs. Lott, Orthodox Jewish, and Mrs. Tumminelli, Roman Catholic, died at about the same hour in the Brooklyn State Hospital. The hospital negligently confused and mistagged the bodies. As a result, the "Tumminelli funeral director" embalmed the body of Mrs. Lott, made it up with cosmetics, and placed it in a coffin with a crucifix and rosary in accordance with Roman Catholic rites. The "Lott undertaker" prepared the body of Mrs. Tumminelli for an Orthodox Jewish burial. The next of kin of each decedent felt that the body had been mishandled and sued the State, which was held liable for the mental suffering resulting to the plaintiffs from the hospital's mistaken and negligent identification of the bodies. Each body had been handled in direct violation of the religious beliefs of the deceased and her family, and the Court held that her next of kin was entitled to damages for the resulting mental suffering.

In *Hale v. Brown,* 84 Ariz. 61, 323 P. 2d 955, the plaintiff's only grievance was that the body of her husband had been embalmed without her express permission *prior* to the autopsy. It appeared from the

evidence that embalming the body had not affected the autopsy findings, and the trial court allowed defendant's motion for summary judgment. The Supreme Court in sustaining the ruling said that "the time of the embalming and not the wrongfulness thereof was the gist of the complaint." Two justices dissented on the theory that "the mere act of embalming without authority" imported at least nominal damages. With this theory we do not agree.

In the case under consideration, plaintiff seeks to recover damages for mental anguish she alleges she suffered when defendant embalmed the body of her husband without first securing her permission. She does not allege that defendant used faulty technique, that the body was negligently embalmed, or that it was subjected to any indignity whatever in preparing it for burial. Indeed, plaintiff does not *ipsissimis verbis* allege *mutilation* of the body. There was no attempt to assert a lien or to collect for the services rendered. Upon demand, defendant relinquished it immediately. If the embalming was done with an ulterior motive, the complaint does not charge it; nor did plaintiff see fit to allege by whom or under what circumstances the body was delivered to defendant. Ordinarily, a body is delivered to a funeral home only for the purpose of embalming and otherwise preparing it for burial in the customary manner. Reasonable promptness in performing this service is essential. Plaintiff makes no allegation that defendant wilfully or maliciously prepared the body for burial in the knowledge that defendant was *persona non grata* to plaintiff and that its performance of this operation, rather than another's performance, would cause her mental anguish. There is no allegation that its employees were aware that plaintiff did not know defendant had the body. In short, the complaint fails to allege any intentional wrong or negligent act on the part of the defendant, nor does it state wherein defendant's preparation of her husband's body for burial caused her such suffering. Defendant simply did what plaintiff would have preferred to have another do and, so far as we are told, it acted in good faith.

We hold that the bare fact of an unauthorized embalming, without more, does not constitute such a mishandling or mutilation of a body as will support a cause of action by the next of kin for mental anguish. If there is more in this case, plaintiff has not alleged it. If, as suggested on the argument, the body was delivered to defendant funeral home because its agent had engaged in unprofessional conduct proscribed by G.S. 90-210.4, that same statute empowers the State Board of Embalmers and Funeral Directors to take appropriate action.

The judgment sustaining the demurrer is
Affirmed.

PARKER, J. dissents.