DISTRICT OF COLUMBIA, Appellant,

v.

Hattie Lee SMITH, et al., Appellees.

No. 80–260.

District of Columbia Court of Appeals.

Argued Aug. 4, 1981.

Decided Nov. 2, 1981.

David P. Sutton, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Stephen J. O'Brien, Washington, D.C., with whom Robert R. Redmon, Washington, D.C., was on the brief, for appellees.

Before KERN, NEBEKER and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Appellant, the District of Columbia, appeals from an adverse judgment entered after a jury verdict in favor of appellees Hattie Lee Smith, Pearlie Smith and Claudie Burns, who brought an action seeking damages for mental anguish resulting from the District's alleged negligent interference with their right to preserve, bury or otherwise dispose of the body of their brother, Casper Yeagin, at the time of his death. Appellant asserts that appellees' failure to prove physical injury, in the circumstances of this case, precludes any recovery for damages for mental anguish. Thus, the submission of the case to the jury was error. We are persuaded by these contentions and therefore order reversal.

I

On September 11, 1977, 68-year-old Casper Yeagin left the home he shared with his sister, appellee Pearlie Smith, at approximately 11:00 a. m. Later that day, Officer Jackson of the Metropolitan Police Department discovered an unidentified man lying on the ground in front of a gas station located on Bladensburg Road, N.E. Believing him to be intoxicated, Officer Jackson arranged for his transport to the District's Detoxification Center (Center) by a fellow police officer. The man was unconscious when he arrived at the Center and was subsequently recorded as "John Doe" on the log book used to record police department transportation of individuals to that facility.

Upon "John Doe's" arrival at the Center, the admissions clerk noted that two wallets were removed from his person. Examination of the wallets produced no typical forms of identification such as a driver's license or social security card. According to the appellees, however, one of the wallets contained three pieces of paper indicating either the names, addresses or telephone numbers of three persons later identified as two of the unconscious man's relatives and one of his friends.

Several hours later, a nurse at the Center examined the man, determined that he was in need of further evaluation, and had him transported by ambulance to Howard University Hospital. His personal property was not sent with him to the hospital but instead was retained in a bag in the property drawer at the Center. He remained unconscious and unidentified for several weeks and died on November 3, 1977. Shortly thereafter, his body was transported to the District of Columbia's Medical Examiner's Office. That office conducted an independent investigation to ascertain his identity by taking fingerprints and attempting to match them with fingerprints on file at various government agencies. These efforts proved unsuccessful and the body was later transferred to the Howard University Anatomical Board where it remained until ultimately identified on January 3, 1978 as Casper Yeagin.

When Casper Yeagin failed to return home on September 11, 1977, his sister, appellee Pearlie Smith, contacted family members and area hospitals in an effort to locate his whereabouts. On September 19, 1977, Pearlie Smith reported the disappearance to the Metropolitan Police Department. Officer Jackson was assigned to the matter and visited Pearlie Smith at her home on the same day. He was given a picture of Casper Yeagin, as well as other information concerning his age, description and habits. Although Mrs. Smith stated that her brother was known to be a heavy drinker who frequented the vicinity of Sid's Liquor Store on Bladensburg Road, N.E., Officer Jackson did not associate the information which he was given with the man he

briefly observed and ordered transported to the Center over a week before. Thus, the officer commenced a preliminary but unsuccessful search for Casper Yeagin which included, among other things, telephoning the Center to determine if any record of Casper Yeagin existed there. His investigation was later interrupted by another assignment.

Pearlie Smith, her daughter, Minnie Champ, and Hattie Smith each made subsequent telephone inquiries to the Metropolitan Police Department regarding the status of the investigation into Yeagin's disappearance. In early January 1978, Minnie Champ called the Missing Persons Section of the Metropolitan Police Department and, as a result, Officer Jackson again responded to the residence of Pearlie Smith. Upon learning that Mr. Yeagin was still missing, Officer Jackson contacted Missing Persons and Officer Keightley of that division was assigned to the case on January 3, 1978. Based on his interview of Pearlie Smith and ensuing investigation, Officer Keightley located the decedent's body at the Howard University Anatomical Board on January 3, 1978; the body was identified as Casper Yeagin later that day by Ms. Champ and appellee Hattie Lee Smith.

## II

Appellees' claim for damages for mental distress was predicated upon an allegation that the District has been negligent in failing to ascertain Casper Yeagin's identity from the documents in his wallet at the time he was brought to the Center and also in failing to pursue with sufficient care the missing persons report. These acts of negligence, appellees argue, interfered with

their right as next of kin to preserve, possess, bury or otherwise dispose of Yeagin's corpse at the time of his death. At trial, the court ruled that the appellees had an actionable claim for the tortious violation of their right to possess their brother's body at the time of his death and that they could therefore recover damages for the mental anguish suffered in hoping that their brother might well be alive only to discover that he was dead. Accordingly, the court instructed the jury that if they found the District negligent, the appellees could recover for any mental anguish suffered which resulted from being denied the possession of the corpse from November 3, 1977, the date of death, until January 3, 1978, the date the body was turned over to the family.

■ It is generally accepted in this jurisdiction that there can be no recovery for negligently caused emotional distress, mental disturbance, or any consequence thereof, where there has been no accompanying physical injury. *Waldon v. Covington*, D.C. App., 415 A.2d 1070, 1076 (1980); *Gilper v. Kiamesha Concord*, D.C.App., 302 A.2d 740, 745 (1973). *See generally Garber v. United States*, 188 U.S.App.D.C. 172, 578 F.2d 414 (1978); *Parrish v. United States*, 123 U.S. App.D.C. 149, 357 F.2d 828 (1966); *Perry v. Capital Traction Co.*, 59 App.D.C. 42, 32 F.2d 938, *cert. denied*, 280 U.S. 577, 50 S.Ct. 31, 74 L.Ed. 627 (1929).

■ Recognizing this precedent, appellees argue that some jurisdictions have abolished the physical injury or impact requirement in actions seeking damages for mental anguish resulting from the negligent or intentional mishandling or withholding of a dead body.[1] They urge us to

---

1. Appellees suggest that the following cases and commentators support their view that the negligent withholding or mishandling of a corpse is an actionable tort for which mental anguish damages are recoverable: *Lott v. State of New York*, 32 Misc.2d 296, 225 N.Y.S.2d 434 (1963) (mental suffering award upheld where state hospital mistagged two dead bodies which resulted in the temporary deprivation of rights to the bodies of the decedents for burial and an unauthorized embalming of one of the bodies); *Simpkins v. Lumbermens Mut. Cas. Co.*, 200

S.C. 228, 20 S.E.2d 733 (1942) (deciding the issue of who the proper party to bring an action for the mutilation of a corpse where the relatives sought damages for injuries to his feelings, the court stated: "Suffice it to say that in our opinion the weight of authority throughout the country holds that the surviving spouse is the proper party to maintain an action for the willful and negligent mutilation of the corpse, and if none such there be, then the next of kin would be the proper one."); *Streipe v. Liberty Mut. Life Ins. Co.*, 243 Ky. 15, 47

allow recovery not only for intentional mishandling but for negligence as well. In the present case, we do not reach this issue, for the common factual thread in all of the cases cited by appellees has been that the defendant's actions constituted a physical invasion or an intentional withholding of a cadaver when the tortious conduct occurred.[2] Here, there is concededly no physical invasion, mutilation, or intentional withholding of a dead body. Moreover, appellees neither alleged nor proved that the appellant committed any negligent act which amounted to a mishandling or withholding of a dead body. The allegations of negligence asserted by appellees occurred either prior to or without any awareness of Casper Yeagin's death. Specifically, the appellant's failure to identify Yeagin at the Center, if viewed as negligent, involved negligence with respect to a live human being—not a corpse. Similarly, the officers who received a missing persons report were not knowingly dealing with a dead body in conducting their search. Hence, any negligent acts which may be attributable to the appellant cannot constitute actionable negligence which would allow a recovery for mental anguish in the absence of physical injury.

The appellees have, throughout trial and appeal, placed heavy reliance on *Steagall v. Doctors Hospital,* 84 U.S.App.D.C. 214, 171 F.2d 352 (1948), arguing that it establishes a legal right to possess, preserve and bury or otherwise dispose of a dead body and that the violation of that right is an actionable tort. We decline to give *Steagall* such broad interpretation. In that case a widow and her two adult sons brought a civil action against a hospital for performing an unauthorized autopsy. The claims of the

---

S.W.2d 1004 (1932) (action brought by spouse to recover damages for unauthorized autopsy, held: a surviving spouse has a right to possession of a dead body and can recover damages for injury to feelings resulting from any wrongful mutilation or mishandling of the corpse).

Professor Prosser also discusses the recovery of damages for mental anguish from the negligent mishandling of corpses:

> Where the defendant's negligence causes only mental disturbance, without accompanying physical injury or physical consequences, or any other independent basis for tort liability, there is still general agreement that in the ordinary case there can be no recovery.
>
> \*   \*   \*   \*   \*   \*
>
> In only two groups of special cases has there been any tendency to break away from the settled rule, and to allow recovery for mental disturbance alone.... The other group of cases has involved the negligent mishandling of corpses. Here the older rule denied recovery for mere negligence without circumstances of aggravation. There are by now, however, quite a series of cases allowing recovery for negligent embalming, negligent shipment, or running over the body and the like, without such circumstances of aggravation. [The Law of Torts § 54, at 328–30 (4th ed. 1971) (citations and footnotes omitted).]

The Restatement of Torts § 868 (2d ed. 1979) states:

> One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body.

2. *See generally* cases cited in note 1 *supra.* We note that many jurisdictions hold that liability arises for the performance of unauthorized autopsies, or other direct, intentional physical invasions of the body amounting to a serious mutilation or trespass. *See, e. g., McPosey v. Sisters of the Sorrowful Mother,* 177 Okl. 52, 57 P.2d 617 (1936); *Aetna Life Ins. Co. v. Burton,* 104 Ind.App. 576, 12 N.E.2d 360 (1938); *Parker v. Quinn-McGowen Co.,* 262 N.C. 560, 138 S.E.2d 214 (1964). In the absence of a physical invasion of the body, courts have allowed recovery for emotional distress, without physical effects, where there has been willful, malicious, or outrageous conduct in withholding a corpse, *see* Annot., *Liability for Withholding a Corpse,* 48 A.L.R.3d 340 (1973), *Chisum v. Behrens,* 283 N.W.2d 235 (S.D.1979), or where there has been negligence by a person with a special responsibility for the body, ordinarily an embalmer with contractual obligations, *see* Annot., *Negligent Embalmers Liability,* 48 A.L.R.3d 261 (1973).

In any event, where liability is imposed on the basis of negligent conduct, that conduct has, in the cases relied on by appellees, concerned the treatment of a corpse. *See* note 1 *supra,* and cases cited therein. Here, by contrast, the alleged negligent acts had as their focus a living person rather than a corpse; thus, there is no basis for recovery of damages for negligently inflicted emotional distress under the line of cases which relate to the treatment of dead bodies.

sons were dismissed by the trial court on the ground that the widow had the sole right of action. On review, the appellate court affirmed, stating that the spouse had the "right to possess, preserve and bury or otherwise dispose of [the] dead body" and that if no spouse survived then that right was in the next of kin. The court added that the violation of such a right was a tort. Our view is that *Steagall* simply decided that a surviving spouse has the primary right of action. Anything pertaining to the scope or definition of the tort involved must necessarily be dicta.[3]

Appellees also relied on, and the trial court adopted, the court's theory in *Finn v. City of New York*, 350 N.Y.S.2d 552, 76 Misc.2d 388 (1973). There, plaintiff's spouse collapsed in a subway station and was taken to a city hospital where he was pronounced dead on arrival. An emergency room nurse conducted a search of the body which produced the deceased's identity. Hospital regulations required that the reports of "DOA" cases be made to the New York City Police Department, if a police officer from that department is not present. The nurse mistakenly assumed that the Transit Authority patrolman who accompanied the decedent into the emergency room was a New York City policeman, and therefore did not report the matter. Although the patrolman reported the information to his superiors, they failed to relay the information to the police department.

When the decedent failed to return home from work, plaintiff notified the Missing Persons Unit of the New York City Police Department, who, in turn, located the decedent at the City Morgue one week later. The plaintiff was awarded damages for the mental anguish and torment she suffered which resulted not from being deprived of the possession of her spouse's remains for proper burial—an injury which for its existence must be based on knowledge of the fact that the death has occurred—but from the defendant's withholding the fact of death from her.[4]

Although the *Finn* case bears similarity to the case at bar, critical factual differences prohibit us from adopting that court's ruling or rationale. The principal distinction is that the *Finn* case did not involve a "John Doe" type situation. Thus, the case focused on whether, *given the defendant's knowledge of the decedent's identity*, they could be held negligent for failing to notify the plaintiff. The defendant's knowledge of the decedent's identity was the key factor which permitted the jury in *Finn* to hold the defendant liable for wrongfully withholding the fact of death. In the case before us, Casper Yeagin was neither deceased nor identified during the time the alleged negligent acts were committed. We therefore decline to adopt appellees' argument that *Finn*, insofar as it allowed recovery for withholding the fact of death, should be extended to instances where the decedent is unidentified. Finally, it is noted that the jury in *Finn* was not permitted to find liability against the defendant based on the theory that the police department had negligently failed to locate the decedent. Here, the appellees expressly requested and the trial court erroneously agreed to submit to the jury the issue of whether the appellant was negligent in failing to locate Casper Yeagin.

"We have seen that a cause of action arises at law where there has been a violation of a right legally recognized, by someone having a legal duty to observe it, with consequent and recognized injury." P.

---

**3.** Indeed, the cases cited in *Steagall* hold, *inter alia*, that a spouse has a primary right to possess, preserve and bury or otherwise dispose of a dead body. *See Steagall, supra*, 84 U.S.App. D.C. 215, at n.2, 171 F.2d at 353 n.2.

**4.** *But cf. Awtrey v. Norfolk & W. Ry. Co.*, 121 Va. 284, 93 S.E. 570 (1917). (Failure to notify the next of kin of death until after burial had been arranged for was held not to constitute a withholding of the corpse. There can be no right of action for withholding the body unless there is some affirmative act on the part of the defendant which deprives the next of kin of the right to give the body such burial as deemed proper; it cannot be said that any legal right of the plaintiff had been interfered with, since she did ultimately exercise her right to bury her son).

Jackson, The Law of Cadavers 143 (2d ed. 1950) (citation and footnote omitted). Appellees' allegations, sounding in negligence, were not as a matter of law sufficient to support an award for mental distress, anguish or suffering. The appellees neither alleged nor proved that the appellant was negligent with respect to a dead body. Therefore, we hold that the trial court's submission of the case to the jury, on the evidence adduced at trial was erroneous as a matter of law. Thus, we reverse and remand the case with directions to enter judgment in appellant's favor.

*So ordered.*