**Marian E. WASHINGTON, Appellant,**

v.

**JOHN T. RHINES COMPANY, Appellee.**

**No. 92–CV–760.**

District of Columbia Court of Appeals.

Argued Dec. 1, 1993.
Decided Aug. 29, 1994.

Schwelb, J., filed dissenting opinion.

---

Amram H. Feldman, Washington, DC, for appellant.

William J. Virgulak, Jr., Washington, DC, for appellee.

Before TERRY, SCHWELB, and KING, Associate Judges.

TERRY, Associate Judge:

This case raises an issue of first impression in the District of Columbia, namely, whether this jurisdiction recognizes—or should recognize—the tort of negligent infliction of emotional distress arising from the alleged mishandling of a dead body. Answering this question in the negative, the trial court dismissed the complaint of appellant Marian Washington under Super.Ct.Civ.R. 12(b)(6) for failure to state a claim upon which relief could be granted. Before this court appellant argues that our decision in *Williams v. Baker*, 572 A.2d 1062 (D.C.1990) (en banc), in no way forecloses her present claim, and that this jurisdiction has long recognized a cause of action in the surviving spouse for the negligent mistreatment of a corpse. She relies principally on *Steagall v. Doctors Hospital*, 84 U.S.App. D.C. 214, 171 F.2d 352 (1948). We hold, however, that *Steagall* does not support her claim and that *Williams* bars it. We therefore affirm the trial court's dismissal of appellant's complaint.

I

On June 21, 1990, Mrs. Washington's husband, Vernon W. Washington, died in the District of Columbia.[1] Later that day Mrs. Washington contracted with appellee John T. Rhines Company ("Rhines"), a funeral home in the District of Columbia, to prepare, embalm, and dress Mr. Washington's body. Pursuant to the agreement, Rhines also transported the casket containing the body to National Airport. From there it was shipped to a funeral home in El Paso, Texas, for an open-casket memorial service and eventual burial in El Paso National Cemetery.

According to Mrs. Washington's complaint, when the casket arrived in El Paso on June 25, it was discovered that

the clothing and the inside of the shipping case were drenched with fluid; there was an offensive odor of embalming and body fluids; there were extreme skin slips, blisters, and discolorations on several parts of the body; the body had begun to turn green and was rapidly decomposing; there was swelling in the face and neck areas; and a catheter tube which had been inserted in the deceased's body during his hospitalization had not been removed.

A representative of the El Paso funeral home informed Mrs. Washington of the condition of her husband's body. The mortician also asked Mrs. Washington to examine the body herself so that she could authorize the funeral home to re-embalm it and make it presentable for open-casket viewing. With Mrs. Washington's permission, the funeral home proceeded to disinfect, re-embalm, and redress Mr. Washington's body, and the open-casket service took place as scheduled. Despite these efforts, however, the body still possessed "a somewhat bloated and distorted appearance at the service."

Some time later Mrs. Washington filed a complaint against Rhines in the Superior Court alleging that, as a result of Rhines' negligence during the first embalming, she had been "prevented from taking possession and proceeding to bury the body of her husband in an orderly manner." She also claimed that Rhines' negligence had caused her to view her husband's body in a deteriorating state when she was asked to authorize the re-embalming in El Paso. As a result, Mrs. Washington alleged, she "suffered severe nervous shock and great mental and emotional pain, anguish, and stress for a long

---

1. In reviewing a dismissal under Rule 12(b)(6), we must read appellant's complaint in the light most favorable to her claim and accept her allegations as true. *E.g., Haymon v. Wilkerson*, 535 A.2d 880, 882 (D.C.1987); *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C.1979). Accordingly, our summary of the facts is based on the allegations in her complaint.

period of time," injuries for which she sought compensatory damages.

Rhines moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. In support of its motion, Rhines argued that there was no basis under District of Columbia law to award Mrs. Washington damages for emotional distress, in that she did not meet the narrow standard established in *Williams v. Baker, supra.* Mrs. Washington argued in response that her claim "stems specifically from the alleged mishandling of her husband's dead body," and that the District of Columbia and other jurisdictions have recognized such claims as exceptions to the general rule governing negligently caused emotional distress. The trial court granted the motion and dismissed her complaint, and Mrs. Washington noted this appeal.

## II

Mrs. Washington urges this court to recognize a cause of action for negligently inflicted emotional distress resulting from the mishandling of a corpse. She observes that the District of Columbia already recognizes a legal right in the surviving spouse of a dead person to possess, preserve, and bury the decedent's body. Relying on *Steagall v. Doctors Hospital, supra,* she asks us to take the next step and permit the surviving spouse to recover damages for emotional distress whenever the right recognized in *Steagall* is negligently violated.

Courts in the District of Columbia historically have cast a wary eye on emotional distress claims. Indeed, until 1990, the solidly established case law was that a person could recover damages for negligent infliction of emotional distress only if that person also sustained a physical injury at the same time. *Asuncion v. Columbia Hospital for Women,* 514 A.2d 1187, 1188–1189 (D.C.1986); *District of Columbia v. Smith,* 436 A.2d 1294, 1296 (D.C.1981); *Gilper v. Kiamesha Concord, Inc.,* 302 A.2d 740, 745 (D.C.1973); *Perry v. Capital Traction Co.,* 59 App.D.C. 42, 44, 32 F.2d 938, 940, *cert. denied,* 280 U.S.

577, 50 S.Ct. 31, 74 L.Ed. 627 (1929). Moreover, under the old standard, plaintiffs were also required to demonstrate that the emotional distress flowed directly from the physical injury. *Asuncion, supra,* 514 A.2d at 1189 n. 1. The rationale underlying this stringent rule was stated in *Clark v. Associated Retail Credit Men,* 70 App.D.C. 183, 185, 105 F.2d 62, 64 (1939):

> The law does not, and doubtless should not, impose a general duty of care to avoid causing mental distress. For the sake of reasonable freedom of action, in our own interest and that of society, we need the privilege of being careless whether we inflict mental distress on our neighbors.

Recognizing that a plaintiff may sometimes suffer serious emotional injury even without any accompanying physical impact, the court in *Williams v. Baker* slightly relaxed the rule that had prevailed until 1990. Sitting en banc, the court adopted the so-called "zone of danger" test followed in a number of other jurisdictions. We held in *Williams:*

> [I]f the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress and any resultant physical injury, regardless of whether plaintiff experienced a physical impact as a direct result of defendant's negligence.

572 A.2d at 1067.[2] Although it marked a significant change from the past, *Williams* was not a radical departure from the strict approach that had always been taken by this court in evaluating emotional distress claims. Indeed, the court in *Williams* considered and rejected a broader "foreseeability" test for assessing emotional distress claims by persons who witnessed injury to others but were themselves outside the zone of danger. In so doing, we examined cases from courts in California and Hawaii which had embraced, but later retreated from, expansive applications of the foreseeability standard. We concluded:

> that such a requirement might not be necessary if the claimed distress were serious and verifiable. *Williams, supra,* 572 A.2d at 1068.

**2.** The court left unanswered the question of "whether mental distress, to be compensable, must result in physical injury," but suggested

The experience of both California and Hawaii confirms our view that this jurisdiction should not cast itself adrift on a sea of infinite foreseeability, subject only to such arbitrary limitation as we should impose. We recognize that the issue of whether a plaintiff can recover damages for fear of harm to a third person is a question of policy for the court, not one to be determined on a case-by-case determination of whether the injury was foreseeable.

*Id.* at 1072.

The court's rejection of the plaintiff's claim in *Williams* shows just how strict the zone of danger test really is. In *Williams,* during the course of an examination in a hospital emergency room, a physician failed to discover that his three-year-old patient suffered from acute epiglottitis and released the boy into his mother's care. Later that evening the boy stopped breathing and collapsed on the floor. He was immediately taken by ambulance to a hospital, where he spent a day and a half in intensive care and was hospitalized for a total of ten days. The boy's mother filed a civil action for medical malpractice and negligent infliction of emotional distress on her own behalf and on behalf of her son, but the trial court granted summary judgment against the mother on her claim for emotional distress.[3] On appeal this court en banc, applying the zone of danger test, affirmed the trial court's dismissal of that claim, holding that because the mother herself was not endangered by the physician's misdiagnosis, she could not recover damages for emotional distress. *Id.* at 1073.

Cases since *Williams* have reiterated its holding that the zone of danger test is the sole means for assessing a claim for damages for negligently inflicted emotional distress. For instance, in *Jones v. Howard University,* 589 A.2d 419 (D.C.1991), we held that a plaintiff could maintain an action for negligently inflicted emotional distress in the absence of any physical injuries or physical manifestations, so long as the claimed emotional distress was both serious and verifiable. A necessary element of the plaintiff's claim, however, was the fact that she was within the zone of danger when she suffered the alleged emotional injury.[4] *Id.* at 424; *see also Cauman v. George Washington University,* 630 A.2d 1104, 1106 (D.C.1993) (disallowing claim for emotional distress in wrongful birth case because parents' complaint did not allege that they were physically endangered by doctors' negligence); *McKethean v. Washington Metropolitan Area Transit Authority,* 588 A.2d 708, 718 (D.C.1991) (affirming summary judgment on emotional distress claim when it was undisputed that plaintiff was "at least one block away from the scene of the accident" giving rise to the alleged mental anguish, and thus outside the zone of danger).[5] We readily conclude from these cases, and of course from *Williams,* that

---

3. In support of her claim for emotional distress, the mother claimed

    that she suffered extreme anxiety from the time her son stopped breathing through the subsequent hospitalization; that she could not eat or sleep for several days after the incident; that for several months thereafter she suffered from bouts of sleeplessness, severe stomach problems, nausea and diarrhea; that she continues to worry about the possibility of brain damage to her child; and that she has been under the care of a psychiatrist.

    *Williams, supra,* 572 A.2d at 1063.

4. In *Jones* the plaintiff was subjected to x-rays and surgery about two weeks before she was discovered to be pregnant with twins. Although her twins were born healthy, the mother sued the hospital and a physician, claiming malpractice and negligently inflicted emotional distress. In holding that her claim was actionable so long as the emotional injury was "serious and verifiable," 589 A.2d at 424, this court answered the

question that it had left undecided in *Williams v. Baker.* See note 2, *supra.*

5. This court has also followed *Williams* in cases alleging only negligence rather than the separate tort of negligent infliction of emotional distress. *See Sowell v. Hyatt Corp.,* 623 A.2d 1221, 1224 (D.C.1993) (holding that plaintiff, who found a worm in a spoonful of rice while eating in defendant's restaurant, could recover damages for emotional distress under negligence and breach of warranty claims because she was in the zone of physical danger and because her emotional distress was serious and verifiable); *District of Columbia v. McNeil,* 613 A.2d 940, 943 (D.C. 1992) (permitting recovery for physical and emotional injuries caused by negligent mismanagement of pregnancy when plaintiff was physically endangered as a result of defendant's negligence).

Mrs. Washington has failed to state a claim for negligently inflicted emotional distress cognizable under District of Columbia law.[6]

A glance at cases from other jurisdictions reaffirms our view that the trial court properly dismissed Mrs. Washington's claim. For example, in *Courtney v. St. Joseph Hospital*, 149 Ill.App.3d 397, 102 Ill.Dec. 810, 500 N.E.2d 703 (1986), *appeal denied*, 114 Ill.2d 544, 108 Ill.Dec. 415, 508 N.E.2d 726 (1987), the Appellate Court of Illinois was asked in an interlocutory appeal whether the "zone of physical danger" rule foreclosed a claim for emotional distress based on the negligent mishandling of a corpse. The court held that the claim was barred. 149 Ill.App.3d at 403, 102 Ill.Dec. at 814, 500 N.E.2d at 707. As an intermediate appellate court with no authority to create new causes of action, the court expressed regret at having to reject the plaintiff's claim, but nonetheless held that the zone of danger test, as a "strictly construed" exception to the impact rule, was the only route to recovery for plaintiffs seeking damages for negligently inflicted emotional distress. *Id.* at ——, 102 Ill.Dec. at 812, 500 N.E.2d at 705.

A number of courts, in cases similar to this one, have limited recovery to situations in which the defendant acted recklessly, willfully, or intentionally in its mistreatment of the decedent's body. *See Fuller v. Marx*, 724 F.2d 717, 719 (8th Cir.1984) (under Arkansas law, plaintiff can recover for emotional distress without physical injury only when the harm was caused by willful or intentional misconduct); *Burgess v. Perdue*, 239 Kan. 473, 479–80, 721 P.2d 239, 245 (1986) (affirming summary judgment for defendant when plaintiff's evidence showed negligent, rather than intentional or malicious, mistreatment of decedent's body); *Daniels v. Adkins Protective Services, Inc.*, 247 So.2d 710, 711 (Miss.1971) (requiring showing of malicious or intentional conduct in order to recover damages for emotional distress in absence of physical injury).[7] This standard closely resembles our separate tort of intentional infliction of emotional distress, which requires proof of "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.) (citations omitted), *cert. denied*, 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982). Since Mrs. Washington's complaint did not even allege that Rhines' behavior was intentional or malicious, however, we see no way for her to recover on this theory.

*Williams v. Baker* notwithstanding, Mrs. Washington asserts that under District of

---

6. Mrs. Washington also argues that the recent decision in *Clement v. Levi*, 121 Daily Wash. L.Rptr. 2089 (D.C.Super.Ct.1993), shows that the universe of emotional distress extends beyond *Williams*. In *Clement* the issue was whether a psychiatric patient could sue her former psychiatrist for malpractice, when it was undisputed that the plaintiff neither received any physical injury nor was within the zone of danger. In holding that she could, the court reasoned that application of the zone of physical danger test would "effectively deny recovery to patients of psychiatrists and psychologists and permit mental health professionals to avoid liability for breach of their professional duties." *Id.* at 2095. We take no position on whether the *Clement* case was correctly or incorrectly decided, but we note that it involves facts quite different from those in the case at bar and, in any event, is not binding on this court.

7. We are aware that some other courts would allow recovery on a showing of simple negligence. *E.g., Brown Funeral Homes & Insurance Co. v. Baughn*, 226 Ala. 661, 148 So. 154 (1933); *Chelini v. Nieri*, 32 Cal.2d 480, 196 P.2d 915 (1948); *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 801 P.2d 37 (1990); *Parker v. Quinn-McGowen Co.*, 262 N.C. 560, 138 S.E.2d 214 (1964); *Corrigal v. Ball & Dodd Funeral Home*, 89 Wash.2d 959, 577 P.2d 580 (1978). These cases, however, are basically incompatible with our own en banc decision in *Williams v. Baker*, and thus we could not follow them even if we were disposed to do so.

Acknowledging these decisions, the American Law Institute has changed its original position and now concludes that family members may recover for the intentional, reckless, or negligent mistreatment of a decedent's body. RESTATEMENT (SECOND) OF TORTS § 868 (1979). Other commentators have recognized the diversity of views without endorsing any one in particular. *See generally* 22A AM.JUR.2D *Dead Bodies* § 151 & nn. 29–30 (1988) (citing cases); Annotation, *Civil Liability of Undertaker in Connection with Embalming or Preparation of Body for Burial*, 48 A.L.R.3D 261, 267 (1973) (recognizing new trend permitting recovery in negligence cases); W. PAGE KEETON *et al.*, PROSSER & KEETON ON THE LAW OF TORTS § 54, at 362 (5th ed. 1984).

Columbia law, a surviving spouse has a separate cause of action for the negligent mishandling of a corpse. She relies mainly on *Steagall v. Doctors Hospital, supra,* in which a widow and two adult sons sued the defendant hospital for allegedly performing an unauthorized autopsy on the decedent. Concluding that the widow possessed the sole right to bring the suit, the trial court dismissed the claim with respect to the two sons. In affirming that dismissal, the Court of Appeals held:

> [T]here exists in our law a right to possess, preserve and bury, or otherwise to dispose of, a dead body; that ... right belongs to the surviving spouse, if any, living in the normal relation of marriage, and, if none such, then to the next of kin in the order of their relation to the decedent; and [a] violation of that right is a tort. It follows that in the case at bar the widow had the sole right of action.

84 U.S.App.D.C. at 215, 171 F.2d at 353. *Steagall* did not identify or describe that right of action, however, and nothing in the *Steagall* opinion even suggested that the surviving spouse was entitled to damages *for emotional distress* as a result of the unauthorized autopsy. We reiterate what we said in *District of Columbia v. Smith, supra:* that "*Steagall* simply decided that a surviving spouse has the primary right of action. Anything pertaining to the scope or definition of the tort involved must necessarily be dicta." 436 A.2d at 1298 (footnote omitted); *see also Davis v. United States Dep't of the Army,* 602 F.Supp. 355, 360 (D.Md.1985) (applying *Smith* to a case involving District of Columbia law for proposition that *Steagall* does not create an actionable tort claim in the surviving spouse). Following *Smith,* which is binding on us, we read *Steagall* only as vesting in the surviving spouse—as opposed to all other family members—the primary right to "possess, preserve and bury, or otherwise dispose of" the body of the decedent. *Steagall,* 84 U.S.App.D.C. at 215, 171 F.2d at 353.

The recent decision in *Mackey v. United States,* 303 U.S.App.D.C. 422, 8 F.3d 826 (1993), does not support Mrs. Washington's more expansive reading of *Steagall.* In *Mackey* the plaintiff's aunt died while in the care of District of Columbia General Hospital ("D.C.General"). Six weeks elapsed, however, before either D.C. General or Saint Elizabeths Hospital, where the aunt had been a patient before being sent to D.C. General, notified the plaintiff of her aunt's death. The plaintiff, as next of kin, then sued the District of Columbia and the United States [8] for, *inter alia,* negligent infliction of emotional distress and negligent interference with the right to possess and dispose of her aunt's body. The trial court, trying the claims against the United States without a jury, awarded the plaintiff $10,000 for negligent interference with the right to possess her aunt's body, but refused to award further damages on her claim for emotional distress. The Court of Appeals affirmed that ruling, noting that the "zone of danger" rule adopted in *Williams v. Baker, supra,* was the only exception to this jurisdiction's otherwise strict treatment of claims for emotional injury. Remarking that "[t]he District of Columbia's recovery rule for negligently inflicted emotional distress is as clear as it is stringent," the *Mackey* court correctly observed that this court "has decisively expressed its hostility to broadening the scope of the *Williams* rule." *Id.* at 427, 8 F.3d at 831, citing *Cauman v. George Washington University, supra.*

We note that in *Mackey* the Court of Appeals, in affirming the trial court's judgment on the negligent interference claim, rejected the appellee's argument that this court had "repudiated" *Steagall* in *District of Columbia v. Smith, supra. See Mackey,* 303 U.S.App.D.C. at 426 n. 2, 8 F.3d at 830 n. 2. We agree with the *Mackey* court in that respect; *Smith* and *Steagall* are not inconsistent. *Steagall* holds that a surviving spouse has a right to "possess, preserve and bury, or otherwise dispose of, a dead body ... and that violation of that right is a tort" for which the surviving spouse has "the sole right of action." 84 U.S.App.D.C. at 215, 171 F.2d at 353. What *Smith* tells us is simply that the

---

8. Saint Elizabeths Hospital was, at the time of the aunt's death, owned and operated by the federal government.

exact nature of this "right of action" is not revealed by *Steagall*. Reading the two cases together, however, we think it is clear that the *Steagall* right of action relates only to the surviving spouse's right of possession and burial. There is nothing in the *Steagall* opinion to suggest that the right of action, whatever it may be, extends beyond vindication of the right to possess, and eventually to bury, the decedent's body. Given our definitive holding in *Williams v. Baker*, we conclude that *Steagall* cannot be read so broadly as to encompass Mrs. Washington's claim for damages.

Thus we hold that, if allowed to proceed with her claim, Mrs. Washington would be unable to prove any set of facts entitling to her to relief under the law of the District of Columbia. The trial court's dismissal of her complaint under Rule 12(b)(6) is therefore

*Affirmed.*

SCHWELB, Associate Judge, dissenting:

As the majority points out, this court has never decided whether the surviving spouse of a decedent whose body has been mishandled in preparation for burial may recover damages for negligent infliction of emotional distress. The question was identified and discussed in *District of Columbia v. Smith,* 436 A.2d 1294, 1296–97 n. 1 (D.C.1981), but its resolution was deferred to another day. That day has now arrived, and I would adopt the approach favored by an emerging majority of the courts and commentators who have considered it, including the Restatement. This approach would require us to reverse the judgment below.

The cautious attitude of this and other courts to authorizing recovery for negligent infliction of emotional distress is based in substantial part on the legitimate concern that mental suffering may too easily be feigned, *Williams v. Baker,* 572 A.2d 1062, 1068 (D.C.1990) (en banc), that assurances are needed that a claimed injury to feelings has not been fabricated, *id.* at 1064–65, and that greater liberality in this area would "open a wide door for unjust claims." *Id.* at

1066 (citation omitted). As counsel for the funeral home conceded at oral argument, this consideration has little or no application to cases like this one. *Cessanti ratione, cessat ipsa lex.*[1]

As my colleagues recognize, *ante* at 349 n. 7, the American Law Institute (ALI), which recognizes the same kinds of restrictions on recovery for negligent infliction of emotional distress as this court does, *see* RESTATEMENT (SECOND) OF TORTS, § 436(2) (1979) (quoted in *Williams,* 572 A.2d at 1066), has nevertheless concluded that dead body cases are different:

> INTERFERENCE WITH DEAD BODIES. One who intentionally, recklessly or *negligently* removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body.

RESTATEMENT (SECOND) OF TORTS § 868 (1979) (emphasis added). The comments to § 868 further spell out the legal principles which, in my view, should dispose of this appeal:

> *d.* The rule stated in this Section applies not only to an intentional interference with the body itself for with its proper burial or cremation, but also to an interference that is reckless *or merely negligent.* Thus an undertaker who negligently embalms the body, a carrier that negligently transports it or an automobile driver who negligently collides with the hearse and dumps the corpse out into the highway will be subject to liability, if the result is harm to the body or prevention of its proper burial or cremation.

> \*   \*   \*   \*   \*   \*

> *f.* The damages recoverable include *not only the mental distress suffered by the one entitled to disposition of the body* but also physical harm resulting from the mental distress.

(Emphasis added).

In a discussion of the appropriate weight to be accorded to the Restatement of Con-

1. "When the reason for a rule of law ceases to exist, the rule of law itself ceases too." (Loose translation from the Latin.)

tracts, this court stated in *Ellis v. James V. Hurson Assocs., Inc.,* 565 A.2d 615 (D.C. 1989):

> In the absence of any current well-developed doctrine in our jurisdiction, we adopt this modern and authoritative exposition insofar as it applies to the case before us.

*Id.* at 618. The ALI's views should likewise be treated as authoritative in the present case.

Dean Prosser and Professor Keeton, perhaps the leading commentators on the law of torts, also subscribe to a restrictive rule for the generality of cases of negligent infliction of emotional distress,[2] but would countenance an exception for situations like this one:

> [One] group of cases has involved the negligent mishandling of corpses. Here the traditional rule has denied recovery for mere negligence, without circumstances of aggravation. There are by now, however, a series of cases allowing recovery for negligent embalming, negligent shipment, running over the body, and the like, without such circumstances of aggravation. *What all of these cases appear to have in common is an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.* Where the guarantee can be found, and the mental distress is undoubtedly real and serious, there may be no good reason to deny recovery.

PROSSER & KEETON, *supra* note 2, § 54, at 362 (emphasis added; footnotes omitted).

In *Brown v. Matthews Mortuary, Inc.,* 118 Idaho 830, 801 P.2d 37, 43–44 (1990), the Supreme Court of Idaho adopted the Restatement rule and identified a substantial number of decisions which recognized an exception for "dead body" cases from otherwise applicable restrictive doctrines governing recovery for the negligent infliction of emotional distress. The reason for the exception is readily apparent; any woman with normal susceptibilities would be likely to suffer genuine distress if her husband's body was treated in the manner described in Mrs. Washington's complaint. See maj. op., *ante* at 346. The danger of feigned or spurious claims in a situation like the present one is surely minimal.

My colleagues rely heavily on our en banc decision in *Williams v. Baker.* When I joined Judge Belson's opinion for the court in that case, I certainly did not conceive that I was telegraphing any views on a dead body case such as this one. The question in *Williams* was whether a mother who was not in the zone of danger could recover for mental suffering allegedly sustained by her as a result of medical malpractice in the treatment of her three-year-old son.[3] The two cases are factually quite different, and we could not and did not decide in *Williams* whether to accept or reject the recognized exception from the general rule in dead body cases. Language from *Williams* cannot usefully be transposed to a scenario like the present case, in which the facts are not even remotely comparable. Indeed, we have often cautioned against such transposition. *See, e.g., Mims v. Mims,* 635 A.2d 320, 325 n. 12 (D.C.1993); *Khiem v. United States,* 612 A.2d 160, 164 (D.C.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993), and authorities cited in *Khiem.*

Treating the allegations of the complaint as true, as we must for purposes of Rhines' motion to dismiss, see maj. op. at 346 n. 1, Mrs. Washington was put through a harrowing ordeal as a result of the defendant's negligence. Her late husband's body was drenched with fluid, discolored, swollen and decomposing, and it emitted an offensive odor. Common sense counsels that if this is what occurred, the injury was genuine, not feigned, and significant, not trivial. "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever [she] receives an injury." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803).

---

2. *See* W. PAGE KEETON, *et al.,* PROSSER & KEETON ON THE LAW OF TORTS § 54, at 361 (5th ed. 1984).

3. In *Williams,* recovery for pain and suffering was available for the son. In this case, either the widow prevails or there is no recovery at all for injury to feelings.

Feelings are facts. Where the injury to feelings is as real and as palpable as that claimed here, we ought not to deny Mrs. Washington redress. She should be permitted to present her evidence to a jury of her peers. Accordingly, I respectfully dissent.